BOARD OF EDUCATION OF THE CITY OF CHICAGO, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD et al., Respondents.

Fourth District   No. 4—87—0537

Opinion filed June 2, 1988.

Patricia J. Whitten, of Chicago (John L. Wren, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and Randi Hammer Abramsky, of Illinois Educational Labor Relations Board, of Chicago (Shawn W. Denney, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Kathrin A. Koenig, of Haggerty & Koenig, Chartered, of Chicago, for respondent Chicago Teachers Union.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On November 29, 1984, petitioner Chicago Teachers Union, Local No. 1 (CTU), filed an unfair labor practice charge with the Illinois Educational Labor Relations Board (IELRB) against respondent, the Board of Education of the City of Chicago (Board), in regard to Ezell Williams, a teacher employed by the Board. The IELRB found sufficient issues existed to warrant a hearing and issued a complaint against the Board on March 22, 1985. The complaint charged the Board with unfair labor practices in violation of sections 14(a)(1), (a)(5), and (a)(8) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1714(a)(1), (a)(5), (a)(8)) by (1) interfering, restraining or coercing employees in the exercise of their statutory rights; (2) refusing to bargain in good faith; and (3) refusing to comply with the provisions of a binding arbitration award in favor of Williams, respectively.

After a hearing, IELRB entered an order on June 24, 1986, approving a report and recommended order of a hearing officer. (*Chicago Board of Education*, 2 Pub. Employee Rep. (Ill.) par. 1089, case No. 84—CA—0087—C (Illinois Educational Labor Relations Board, June 24, 1986).) The Board attempted an appeal from that order, but, as explained later, this court dismissed the appeal on the basis that the order of June 24, 1986, lacked finality. (Board of Education v. Illinois Educational Labor Relations Board (4th Dist., Feb. 18, 1987), No. 4—86—0510 (dismissed on motions of respondents).) On July 9, 1987, IELRB issued a further order which, when combined with the June 24, 1986, order, had the effect of finding the Board guilty of each of the unfair labor practices charged. The basic theory of IELRB in making its finding, and its theory and that of CTU in this court, was that the Board committed an unfair labor practice by refusing to abide by an arbitration award. The other unfair practices arose automatically out of and were "derived" from that conduct. The order required the Board to abide by the arbitration award, to cease and desist from violations of the Act and to take affirmative action to effectuate the policies of the Act. The Board has taken administrative review to this court. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1716.) We affirm in part and reverse in part.

The arbitrator's award arose from a grievance filed by Williams and is the heart of the dispute between the parties. On review, the Board does not dispute the propriety of the substance of the arbitrator's award. Rather, the Board contends: (1) after the Board had

complied with the arbitrator's original award, the arbitrator purported to make a substantial modification of the award, and he had no authority to do so; (2) IELRB lacked jurisdiction to hear the unfair labor practices claims because CTU failed to file the complaint within the period prescribed by section 15 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1715); (3) the evidence failed to support a finding that the Board violated sections 14(a)(1) or (a)(5) of the Act, respectively, by interfering, restraining, or coercing the employees or refusing to bargain collectively in good faith; (4) the order usurped the Board's authority in establishment of curriculum; and (5) the IELRB used improper procedures in dealing with the latter question.

The decision of the arbitrator was based upon his determination of the following facts. In 1971, the Board hired Williams and assigned him to Cregier Vocational High School. In 1973, the Board reassigned Williams to Dunbar Vocational High School in an extended- or eight-hour day teaching position. A teacher in this type of position teaches two additional classes and receives his base salary plus 20% as compensation. Williams remained in his extended-day position until September 1981, when the Dunbar high school principal reorganized the drafting department. The principal used additional hours from both extended-day and overtime positions to create a new faculty position. In the process, the principal reduced Williams to a six-hour day or "regular" teaching position.

The arbitrator concluded that the extended-day program was initiated to allow the Board to sufficiently remunerate teachers in industrial training to encourage them to enter or stay in that field rather than work in industry. The arbitrator further determined a practice, tacitly incorporated in the collective-bargaining agreement, had developed whereby a teacher hired on an extended-day assignment was entitled to retain such an assignment unless insufficient pupil selection of the subject taught by the teacher existed to justify withdrawing the assignment. The decision stated the principal sought to justify the termination of Williams' extended-day assignment on the need for another full-time teacher who would be able to give extra supervision to pupils. The arbitrator held this was not a sufficient reason, within the practice which had developed, to terminate Williams' extended-day assignment.

The arbitrator's decision was issued November 28, 1983, culminating in an award. The award stated "the grievance is sustained" and granted Williams compensation of 7.5% over his base pay for most of the 1981-82 and 1982-83 school years. The award did not

mention a remedy of reinstatement. The final sentence of the award also stated "the arbitrator retains jurisdiction of this case for 30 calendar days, and either party may request clarification of the remedy." Apparently neither party objected to this retention of jurisdiction by the arbitrator, although the collective-bargaining agreement does not give an arbitrator express authorization to act further after issuance of the award. The Board paid Williams his back pay as set forth in this arbitration award.

On December 23, 1983, counsel for CTU wrote the arbitrator and sought clarification of his award. In particular, it inquired in its letter (1) whether Williams was entitled to reinstatement of his extended-day position if certain conditions as set forth in the arbitrator's decision currently existed; and (2) whether Williams, if reinstated, was entitled to additional compensation for the fall semester of the 1983-84 school year and, if so, at what pay rate. On January 4, 1984, the arbitrator responded in a letter to counsel for CTU as follows:

> "Thank you for your letter of December 23, 1983, requesting clarification of the award in the above referenced case. With regard to point A, if the conditions outlined in my decision are applicable in January of 1984, i.e., no decrease in enrollments, sufficient overtime classes, etc., the grievant *is* entitled to reinstatement in the extended day program. This issue, you may recall, was *not* raised at the hearing, and the relief prayed for, sought damages for the 1982-83 school year only. On that basis (and regarding point B), *no* increment shall be granted for September to December of 1983.
>
> I hope this helps clear up the outstanding issues." (Emphasis added.)

The parties' briefs indicate that, prior to August 1, 1984, counsel for CTU contacted counsel for the Board and said she was going to write the arbitrator; the Board's brief indicates its counsel replied by "request[ing] that he be allowed to respond to any action that Arbitrator Peterson would consider."

On August 1, 1984, counsel for CTU wrote a letter to the arbitrator. In it, she stated CTU and the Board "ha[d] engaged in efforts to implement [his] decision," but "there still remain[ed] some confusion as to the extent of remedy." Further, she said "counsel for the Board and I *** agreed to resubmit certain questions to you for further clarification *** on the condition that [the Board's counsel] be allowed an opportunity to respond." She outlined in her letter the arbitrator's initial decision and award. She also discussed her

earlier request for clarification and the arbitrator's response to it; in particular, she indicated his answer to her first inquiry regarding reinstatement of Williams was " '*no*,' for the stated reason that the 'issue was not raised at the hearing and the relief prayed for sought damages for the 1982-83 year only.' " (Emphasis added.)

In the remainder of her August 1, 1984, letter, counsel for CTU referred to numerous places in the record where the grievant had expressed his desire to be reinstated to his extended-day position. She then questioned the arbitrator's determination in his January 4, 1984, letter that Williams was not entitled to reinstatement because the question was not raised at the hearing. She asked for further clarification of the reimbursement issue and a response to whether Williams was entitled to any remuneration for the 1983-84 school year.

The arbitrator responded to the attorney's letter on October 8, 1984. In his letter, he stated as follows:

"I had hoped that it was clear from my letter of January 4, 1984, that Mr. Williams is *entitled to immediate reinstatement* [emphasis in original] to his extended day program as of January 4, 1984. You are correct that the issue of reinstatement was raised not only by the grievance, but also in the course of the hearing, while the *original award* (November 28, 19[8]3) did *not* address the issue of reinstatement, my *clarification letter* of January 4, 1984, *clearly did so, and clearly that letter directed reinstatement of Williams to the extended day program* when there were no decrease in enrollments, etc. [Emphasis added.]"

The letter further stated the Board was required to pay Williams an additional 20% of his base pay from January 4, 1984, to the time of his reinstatement due to its "failure *** to abide by the terms of [the arbitrator's] clarification letter of January 4, 1984."

Counsel for the Board responded to this letter on October 15, 1984. In addition to outlining the events which had transpired, the attorney further noted the arbitrator's response on January 4, 1984, as to whether Williams should be reinstated was an "emphatic negative." She also acknowledged counsel for CTU had contacted the Board's law department prior to writing their letter of August 1, 1984, and "[t]he Law Department requested that it be given time to respond" to their letter. She attacked the arbitrator's failure to set up a response time and stated it would not have been efficient for it to respond "to a letter sent to [him] in a matter in which [he] did not have jurisdiction." She further set forth the Board's position as

follows: "[Y]our jurisdiction in this matter terminated with the issuance of your award on November 28, 1983 and possibly extended at most to December 29, 1983 with your statement that you were extending your jurisdiction for thirty (30) days." Finally, she proclaimed the Board would "not recognize any amendment or modification to [his] November 28, 1983 award after [his] jurisdiction ha[d] expired."

The question of whether the arbitrator retained power to modify his award from his decision on November 28, 1983, until his letter on October 8, 1984, is the most difficult and significant problem in the case. Historically, the role of the arbitrator ended with rendition of the award, and, at least at common law, the arbitrator could neither amend nor correct it thereafter. This absence of authority was based on the doctrine of *functus officio*: "[H]aving rendered the award the arbitrator's task ha[d] been fulfilled." O. Fairweather, Practice & Procedure in Labor Arbitration 579 (2d ed. 1983).

Case law and statutes have gradually eroded this doctrine. For example, section 9 of the Uniform Arbitration Act provides that "arbitrators may modify or correct the award upon the grounds stated in [this Act] or for the purpose of clarifying the award." (Ill. Rev. Stat. 1983, ch. 10, par. 109.) Moreover, the Fourth Circuit rejected application of the doctrine in *Enterprise Wheel & Car Corp. v. United Steelworkers* (4th Cir. 1959), 269 F.2d 327, *reversed in part & affirmed in part* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358. There, the arbitrator had awarded reinstatement and compensation but failed to include in his award certain amounts necessary to complete the mathematical calculations. The court directed the parties to take steps to ascertain the amounts in order to complete the arbitration.

More recently, courts have allowed modification and clarification of an award by the arbitrator if both parties have requested it or consented to it. In *Textile Workers v. Courtaulds North America, Inc.* (S.D. Ala. 1972), 80 L.R.R.M. 2823, a union was held to have consented to resubmission of a matter to an arbitrator by appearing and again arguing the merits of the dispute. A similar holding was contained in *Tri-City Jewish Center v. Blass Riddick Chilcote* (1987), 159 Ill. App. 3d 436, 512 N.E.2d 363. A text on labor law has noted, though, that "a clarification usually cannot be obtained from the arbitrator on a request by *one* party, under the remnant of the *functus officio* doctrine that provides that the arbitrator's function is exhausted when he or she submits an award unless jurisdiction is reestablished by the two parties jointly." (Emphasis in origi-

nal.) O. Fairweather, Practice & Procedure in Labor Arbitration 636 (2d ed. 1983).

■ The Board only mildly disputes the power of the arbitrator to reserve jurisdiction for 30 days to change the award. The letter from CTU written on December 23, 1983, was written and apparently received by the arbitrator within 30 days of the November 28, 1983, decision. The arbitrator's letter of January 4, 1984, was issued after the 30-day limitation, but it provided a clarification or modification pursuant to a request made within the 30 days. Modern theory suggests a power resides in the arbitrator to make such a ruling absent timely objection of a party.

■ The propriety of the October 8, 1984, modification or clarification is questionable. However, the action of the arbitrator was more of a clarification than a modification because the arbitrator had stated in his prior letter that Williams was entitled to reinstatement under proper conditions. In the August 8, 1984, letter by CTU's counsel to the arbitrator, he maintained the parties had "agreed" to further request for clarification being made to the arbitrator. Counsel for the Board made no response to that claim although apparently counsel had received a copy of the letter. On this record, IELRB's determination that the Board tacitly consented to further consideration by the arbitrator was contrary neither to the manifest weight of the evidence nor to law.

■ The Board maintains CTU should have sought modification of the award in the circuit court under provisions of the Uniform Arbitration Act. (Ill. Rev. Stat. 1983, ch. 10, pars. 101 through 123.) However, section 12(e) of the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, par. 112(e)) expressly exempts procedures for modification or correction of an arbitration award arising out of a collective-bargaining agreement from the coverage of that legislation. Moreover, in *Board of Education of Community School District No. 1 v. Compton* (1987), 157 Ill. App. 3d 439, 510 N.E.2d 508, *appeal allowed* (1987), 116 Ill. 2d 548, this court has held the Act (effective January 1, 1984) impliedly abolishes common law or statutory causes of action to modify, clarify or set aside any arbitration award made pursuant to a collective-bargaining agreement which is subject to the Act. However, not all districts of the appellate court are in agreement. (Compare *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259, with *Board of Education v. Warren Township High School Federation of Teachers* (1987), 162 Ill. App. 3d 676, 515 N.E.2d 1331, *appeal allowed* (1988), 119 Ill. 2d 554.) *Compton* is the prevailing precedent

unless reversed. Moreover, the existence of a common law remedy to seek modification would not destroy any power of the arbitrator to do so. If such a common law remedy exists, the scope of inquiry by the circuit court would be much more limited than that of the arbitrator. (See *Board of Education v. Chicago Teachers Union* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199.) This contention by the Board is without merit.

The award of the arbitrator stands as modified by his letter of October 8, 1984.

■■ Section 15 of the Act provides that "[n]o order shall be issued upon an unfair practice *occurring more than 6 months before* the filing of the charge alleging the unfair labor practice." (Emphasis added.) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1715.) As the charge here was filed on November 29, 1984, the six-month period for filing the complaint extended back to May 29, 1984. In its opinion and order, the IELRB applied the discovery rule and determined the six-month period had not begun until CTU knew or had reason to know the Board had committed an unfair labor practice. IELRB cited Federal precedent for application of the discovery rule to time limits for the filing of unfair labor practice charges. (Citing *Farr v. H. K. Porter Co.* (5th Cir. 1984), 727 F.2d 502; *Benson v. General Motors Corp.* (11th Cir. 1983), 716 F.2d 862.) The Board does not cite persuasive authority to the contrary. We have some concern with applying a discovery rule which, even after a very extended period, gives a party no repose from claims of unfair labor practices not previously discovered, but IELRB agrees such a rule has reasonable limits. In any event, we need not decide whether the discovery rule was applicable here because we hold the record shows the Board did not "refus[e] to comply with the provisions of a binding arbitration award" prior to May 29, 1984. Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1714(a)(8).

The correspondence of the parties indicates that, until well after May 29, 1984, the position of CTU was that the arbitrator's determination in regard to whether Williams was entitled to reinstatement of his extended-day status was somewhat unclear, and the Board took the position Williams was not so entitled. While the arbitrator's letter of January 4, 1984, did state "the grievant is entitled to reinstatement in the extended-day program" if the conditions in regard to pupil demand were met, that letter contained subsequent language which gave some inference the point had been waived. As long as the parties were in agreement that no definite award of reinstatement existed, the Board was not in defiance of the order, and

the filing of a charge would not have been proper. The charge was timely filed, and the IELRB had jurisdiction.

■ As we have indicated, the IELRB's determination that the Board (1) interfered, coerced or restrained employees, and (2) refused to bargain in good faith (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1714(a)(1), (a)(5)) is based entirely on the premise such conduct inherently occurs when an employer refuses to abide by a valid arbitration award. The Board contends that, under the evidence in this case, such a determination was improper. While IELRB and CTU support their theory by citation of administrative decisions, we agree with the Board that finding the Board guilty of such conduct was not supportable.

Here, the Board cooperated in submitting to arbitration a dispute which arose, not from the express terms of the collective-bargaining agreement, but from a course of dealing. Nothing in the conduct of the Board giving rise to the dispute indicates any attempt to interfere, coerce or restrain any employee. Rather, the school principal, in making a good-faith attempt to provide a more effective school operation, was determined to have violated a customary practice. The arbitrator issued an ambiguous award which was clarified only after an extended period. A very close legal question was created in regard to the validity of the award. Under the decision of this court in *Board of Education of Community School District No. 1 v. Compton* (1987), 157 Ill. App. 3d 439, 510 N.E.2d 508, the only procedure by which the Board could challenge the validity of that award was to refuse to abide by the award and await a charge of committing an unfair labor practice. We cannot agree a section 14(a)(8) violation in refusing to abide by an arbitration award is always a section 14(a)(1) violation, and we refuse to hold the conduct of the Board here constituted a section 14(a)(1) violation.

■ Section 14(a)(5) of the Act contains rather disjointed language which indicates an employer's conduct which constitutes a refusal to bargain in good faith is not limited to a refusal by the employer to discuss "grievances with the exclusive representative." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1714(a)(5).) Based upon that language and several decisions by administrative agencies, IELRB and CTU contend the refusal of an employer to abide by an arbitrator's award is a failure to bargain in good faith. Here, the collective-bargaining agreement calls for the arbitration of disputes. The theory is that the failure to abide by the arbitration agreement is a breach of the collective-bargaining agreement, and a breach of that agreement is a failure to bargain in good faith because the breach is detrimen-

tal to the bargaining process.

Neither the language of section 14(a)(5) nor the authority cited requires us to adopt the theory of IELRB and CTU. Matters other than grievances are clearly subject to collective bargaining, yet we need not give the language of section 14(a)(5) the broad interpretation proposed. To construe a failure to abide by an award as a failure to bargain tortures the meaning of the words used. Such a practice leads to confusion and uncertainty. If creation of a fiction was necessary to provide a remedy, this contortion of the language might be excusable, but neither CTU nor Williams is lacking in a remedy here. Thus, the situation is unlike that in matters governed by the National Labor Relations Act (29 U.S.C. §151 *et seq.* (1982)), which contains no provision making the failure to abide by an award of an arbitrator an unfair labor practice. (See 29 U.S.C. §158(a) (1982).) We note again, as we did in discussion of the application of section 14(a)(1), that the effect of the rule adopted by IELRB is to impose *per se* an additional misdeed upon the employer for seeking the only remedy available under *Compton* to test the validity of a questionable arbitration award. We hold the IELRB also erred in finding the Board guilty of a section 14(a)(5) violation.

■ We next consider together the Board's contention the order violated the Board's authority to establish curriculum and the Board's criticism of the IELRB procedure. The Board does not dispute that, if the arbitrator had the power to modify or clarify his award, it is bound by the award subject to the qualifications of the award. Rather, it argues IELRB should not have ordered reinstatement in 1987, because to do so then violated the statutory responsibilities of the Board which it delegated to the school administrators. The existence of the powers of the Board are not in dispute, and they need not be detailed here. However, the Board cites no authority which prohibits the Board from agreeing, either tacitly or expressly, with the teachers' exclusive bargaining representative that teachers assigned extended-day teaching assignments could maintain those assignments as long as demand existed for the classes despite the conclusion by the administration that a different arrangement would be more beneficial to the operation of the schools. The arbitrator found such an agreement existed, and IELRB required the Board to follow it as long as demand existed for the classes.

As we have indicated, confusion arose over the IELRB's order of June 24, 1986. The final two paragraphs of that order stated as follows:

"Finally, we reject Respondent's assertion that the Hearing

Officer's Recommended Decision 'invades the statutory mandate of the Board of Education to establish a curriculum in its schools' and that compliance with the award would 'disturb the educational program at Dunbar High School.' Although Respondent elicited some testimony tending to show that conditions during the 1983-84 and 1984-85 school years made Williams' reinstatement impossible, the proof was insufficient to enable the Hearing Officer or us to reach that conclusion. *Additional proof on that issue, however, may be offered to the Executive Director in a compliance review of this Opinion and Order.* See, *Goreville Districts No. 18 and No. 71,* 1 PERI par. 1183 (Case No. 84—CA—0047—S (IELRB 1985) (Respondent may show cause why Board's cease and desist order would result in undue hardship or disruption of the educational program of a statutory conflict).

## V.

We find that the Hearing Officer's order with respect to remedy is in consonance with her decision and we affirm the order. Respondent shall notify the Executive Director within thirty-five (35) days after receipt of this Opinion and Order, the steps taken to comply with it or show cause why it cannot immediately comply." (Emphasis added.) *Chicago Board of Education,* 2 Pub. Employee Rep. (Ill.) par. 1089, at VII-257, case No. 84—CA—0087—C (Illinois Educational Labor Relations Board, June 24, 1986).

The Board sought review of that order in this court, but the appeal was dismissed on the motions of the IELRB and CTU. (Board of Education v. Illinois Educational Labor Relations Board (4th Dist., Feb. 18, 1987), No. 4—86—0510 (dismissed on motions of respondents).) The IELRB in its order had sought further proof on the question of conditions at the school in the 1983-84 and 1984-85 school years. That issue was before IELRB and bore on the propriety of its then issued order. That order provided for a "compliance review," which would include a determination of whether conditions at Dunbar Vocational High School in the 1983-84 and 1984-85 school years were such that insufficient course demand existed to give Williams an extended-day assignment. This was part of the period of time for which that order found the Board guilty of an unfair labor practice for not giving Williams such an assignment. Thus, the "compliance" procedure would amount to a review of that order. For that reason, that order lacked finality and reviewability by this

court.

▮ The IELRB apparently misunderstood the reason its June 24, 1986, order was not final, for, after the Board's attempted administrative review to this court was dismissed and the cause remanded to IELRB, that agency conducted certain informal proceedings to determine compliance with its previous order. The proceedings ended when the Executive Director stated he had conducted an investigation which showed "Williams could have been" and could then be reinstated in compliance with the award. An order was then entered on July 9, 1987, in which the IELRB determined that compliance with the arbitrator's award was possible without invading the Board's power and duty to determine curriculum. We deem that, with that determination, the combination of that order and the previous order of June 24, 1986, terminated the proceeding and made the July 9, 1987, order a final order regardless of any error which had occurred.

The question of the sufficiency of a demand to provide enough pupils for an extended schedule for Williams must be considered in three phases. The situation prior to and at the time of the hearing before the arbitrator is the first phase. His determination in that regard is subject to only very limited review, and the Board does not dispute that we must abide by his determination that Williams should have been retained in an extended-day status at that time. The second phase concerns the period thereafter until the IELRB makes its final determination, and the third phase involves the time after a final order.

▮ The final phase involves compliance with a final IELRB order. Enforcement of that order can be sought by IELRB in the circuit court pursuant to section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715). Informal procedures such as those used here in the compliance proceedings might well be appropriate as an antecedent to seeking enforcement under section 15. Such procedure, however, was not proper when used for the purpose of determining the demand for courses in the school years of 1983-84 and 1984-85. That occurred during the second phase and concerned the question of whether the Board violated the order of the arbitrator. Inquiry into the situation in those years should have conformed to the procedure required for hearings on complaints with regard to unfair labor practices, and evidence should have been received only in accordance with section 12 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1012).

Despite the procedural improprieties which resulted from confu-

sion over our order of dismissal, reversible error did not result from the IELRB determination that the Board was in violation of the arbitration award for not reinstating Williams' extended-day assignment for the school years 1983-84 and 1984-85. The evidence properly received by IELRB before entry of its June 24, 1986, order clearly showed that, during the 1983-84 school year, two teachers teaching the basic drafting course were given overtime assignments. Had those two assignments been taken from those teachers and given to Williams, who had greater seniority, compliance with the award could have been obtained. Similarly, in the 1984-85 year, a substitute teacher could have been relieved of her duties and her two classes given to Williams in order to enable him to work an extended day. The order indicated IELRB did not deem the evidence before it sufficient to show the Board could not comply with the arbitrator's award during the time involved. Necessarily, this determination was incorporated in the final order entered on July 9, 1987.

However, the July 1987 order also found that, up to that date, conditions were also such that sufficient course demand existed to require an extended-day assignment for Williams. This period included the 1985-86 and 1986-87 school years. No competent evidence supported such a determination, however. To the extent the order before us so provides, the order must be reversed.

Accordingly, we affirm the order on review to the extent it (1) finds the Board to have violated section 14(a)(8) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1714(a)(8)) by failing to place Williams in an extended-day assignment and pay him accordingly for the 1983-84 and 1984-85 school years; and (2) orders the Board to abide by the award, cease and desist from violations of the Act, and take affirmative action to effectuate the policies of the Act. We reverse the portion of the order which finds the Board committed an unfair labor practice for failure to place Williams in an extended-day schedule for the school years 1985-86 and 1986-87 and remand the cause to IELRB for a proper hearing on that issue. We reverse that portion of the order which finds the Board violated sections 14(a)(1) and (a)(5) of the Act. Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1714(a)(1), (a)(5).

Affirmed in part; reversed in part and remanded with directions.

LUND and KNECHT, JJ., concur.