GLASS, MOLDERS, POTTERY, PLASTICS AND ALLIED WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, LOCAL 182B, Plaintiff–Appellant,

v.

EXCELSIOR FOUNDRY COMPANY, et al., Defendants–Appellees.

No. 94–3734.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1995.

Decided June 13, 1995.

Arthur J. Martin, Charles A. Werner, Schuchat, Cook & Werner, St. Louis, MO,

Carl S. Yaller (argued), Glass, Molders, Pottery, Plastics & Allied Workers, Media, PA, for plaintiff-appellant.

Brian McGovern (argued), Michael E. Kaemmerer, McCarthy, Leonard, Kaemmerer, Owen, Laderman & Lamkin, Chesterfield, MO, Lawrence F. Raniszeski, Colombo & Colombo, Bloomfield Hills, MI, for defendant-appellee.

Before POSNER, Chief Judge, and ESCHBACH and MANION, Circuit Judges.

POSNER, Chief Judge.

This appeal brings before us a doctrine of the law of arbitration that goes by the name of "functus officio." The term is Latin for "office performed" and in the law of arbitration means that once an arbitrator has issued his final award he may not revise it. *Anderson v. Norfolk & Western Ry.*, 773 F.2d 880, 883 (7th Cir.1985); *Domino Group, Inc. v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 420–21 (8th Cir.1993); *Colonial Penn Ins. Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 331–32 (3d Cir.1991); 3 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich, *Federal Arbitration Law* § 37.6.1 (1994). The arbitrator has performed his office and having done so has been discharged from it.

When an employee of defendant Excelsior named Jackson flunked a test for cocaine, failed to complete a drug-rehabilitation program, and as a result was fired, his union filed a grievance which eventually went to arbitration. The arbitrator ordered Excelsior to reinstate Jackson "without backpay or fringe benefits, if he completes a company medically approved rehabilitation program within 60 days from the rendition of this award." The award was issued on May 6, 1993, so the 60 days ran out on July 5. The award did not say who would pay for the program. The cost of the program approved by the company was $3,000, and Jackson is not affluent. The program lasts only 28 to 30 days, so Jackson and the union had a little time, but only a little time, to find out who would pay before he had to enroll in order to make the 60-day deadline. After fruitless negotiations with the company, the union on May 24 asked the arbitrator to clarify the award. On June 2, in response to this re-

quest, the arbitrator stated that he had not intended to require the company to pay; Jackson would have to pay. After working out an installment plan for paying for the program, Jackson finally enrolled. But by now the July 5 deadline was looming, and it was not until July 27 that he completed the program. This was more than 60 days after the arbitrator's award had been rendered. But shortly before Jackson completed the program his union representative had called the arbitrator to ask when the 60–day period for the completion of the rehabilitation program had started to run. On July 30 the arbitrator wrote the parties that it had started to run on June 2, the date of his letter clarifying the award (rather than May 6, the date of the award), which meant that Jackson had completed the program within the deadline after all. Excelsior nevertheless refused to reinstate Jackson, so the union brought this suit to enforce the arbitrator's award and thus compel reinstatement. 29 U.S.C. § 185. The district judge granted summary judgment for the employer on the ground that the arbitrator's action in extending the period for completion of the drug-rehabilitation program was forbidden by the doctrine of functus officio.

■ The employer waxes indignant over the union's having asked the arbitrator ex parte, and therefore in violation of the rules of the American Arbitration Association, which the parties had agreed would govern the arbitration, when the 60–day period had begun to run. The violation was harmless, however, and possibly condoned or even invited. Time was of the essence. The employer had refused to cooperate in getting either the issue of payment or the issue of the deadline back before the arbitrator. One of the employer's representatives had told the union's representative to "do what you have to do" when the union's representative said he wanted to ask the arbitrator for clarification, and this might have been construed as authorization to approach the arbitrator ex parte, provided, of course, that the union did not use the occasion to argue its case. It did not. And even if an improper, uncondoned ex parte contact occurred, this would not in itself warrant the vacating of the arbitrator's award. An ex parte contact is not an automatic ground for invalidating

such an award. The contact would have to trigger one of the recognized grounds for vacation, such as partiality on the part of the arbitrator, *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1025 (9th Cir.1991); *Toyota of Berkeley v. Automobile Salesmen's Union*, 834 F.2d 751, 755 (1987), as amended, 856 F.2d 1572 (9th Cir.1988), and this is not argued. These cases, by the way, like many cited in this opinion, involve general commercial arbitration rather than labor arbitration. But the differences between the two types of case in regard to the standards for vacating arbitrators' awards are subtle, cf. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 and n. 9, 108 S.Ct. 364, 372 and n. 9, 98 L.Ed.2d 286 (1987), and we are given no reason to suppose that they extend to matters of ex parte contacts.

■ The issue of ex parte contacts is a red herring. The district court's decision must stand or fall on the applicability of the doctrine of functus officio.

The doctrine originated in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it. *Courier–Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 278 (1st Cir.1983); *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 982–85 (2d Cir.1942) (Frank, J.). It is said to have been "nourished by the primitive view of the solemnity of all judgments." *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir.1967). Today, riddled with exceptions, it is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain. See, e.g., *Newman v. Corrado*, 897 F.2d 1579, 1583 (Fed.Cir.1990); *Red Star Express Lines v. International Brotherhood of Teamsters*, 809 F.2d 103, 106 (1st Cir.1987); *id.* at 108 (concurring opinion); *Local P–9 v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 n. 1 (8th Cir.1985); *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 841 n. 3 (10th Cir.1985); *Industrial Mutual Association, Inc. v. Amalgamated Workers*, 725 F.2d 406, 412 n. 3 (6th Cir.1984).

The doctrine is based on the analogy of a judge who resigns his office and, having done so, naturally cannot rule on a request to reconsider or amend his decision. Arbitra-

tors are ad hoc judges—judges for a case; and when the case is over they cease to be judges and go back to being law professors or businessmen or whatever else they are in private life, like Cincinnatus returning to his plow. The flaw in the analogy is that the judge's resignation does not deprive litigants of an opportunity to seek reconsideration of his decisions. Motions to reconsider are simply directed to another judge. If the "resignation" of the arbitrator from the case, in accordance with the doctrine of functus officio, disables him from considering a motion for reconsideration, clarification, amendment, or other modification, there is nobody to whom the parties can turn. The result would be a gap in the system of arbitral justice that would make very little sense that we can see. Not no sense. Once they return to private life, arbitrators are less sheltered than sitting judges, and it is feared that disappointed parties will bombard them with ex parte communications and that the arbitrators, not being professional judges or subject to the constraints of judicial ethics, will yield, as in *Domino Group v. Charlie Parker Memorial Foundation, supra,* 985 F.2d at 420—and as in this case, for that matter, though here the ex parte communication was harmless.

Concern about ex parte communications with arbitrators strikes us as a better reason for barring such communications than for denying arbitrators all power to revisit their awards. To impose such a bar would be to clothe arbitrators with an ill-fitting mantle of infallibility. (The implication of infallibility may seem paradoxical in light of the origin of the doctrine in the era of hostility to arbitration. But denying arbitrators the ordinary powers of judges reduces the utility of arbitration and is thus consistent with that hostility.) In recognition of the fallibility of earthly lawgivers, every court, and every administrative agency that exercises adjudicative authority, has been understood to have (at least until the matter is regularized in rules, such as Fed.R.Civ.P. 60) the inherent power to reconsider its decisions within a reasonable time. *Zimmern v. United States,* 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118 (1936) (Cardozo, J.); *Eifler v. Office of Workers' Compensation Programs,* 926 F.2d 663, 666 (7th Cir.1991); *In re Met–L–Wood Corp.,* 861 F.2d 1012, 1018 (7th Cir.1988); *United States v. Angiulo,* 755 F.2d 969, 972 (1st Cir.1985); *Patton v. Secretary of Dept. of Health & Human Services,* 25 F.3d 1021, 1027 (Fed. Cir.1994) (dictum). Arbitrators are no more infallible than judges. They make mistakes and overlook contingencies and leave much to implication and assumption—as the present case illustrates. The arbitration award says that Jackson has 60 days to complete a rehabilitation program. Period. But many drug-rehabilitation programs have long waiting lists. What if Jackson had applied to the company-approved program the day after the award was rendered, had been put on a waiting list, and as a result could not have completed the program within 60 days of the date of the order? What if through no fault of his own he had broken his leg in the middle of the program and had had to withdraw?

These questions, as well as the less dramatic question whether the uncertainty about who would pay for Jackson's rehabilitation justified an extension of the deadline fixed in the original award, can fairly be characterized as "interpretive," allowing the union and Jackson to crawl through the loophole in the doctrine of functus officio for clarification or completion, as distinct from alteration, of the arbitral award. See, e.g., *Industrial Mutual Association, Inc. v. Amalgamated Workers, supra,* 725 F.2d at 412 n. 3; *Courier–Citizen Co. v. Boston Electrotypers Union No. 11, supra,* 702 F.2d at 279–80; *La Vale Plaza, Inc. v. R.S. Noonan, Inc., supra,* 378 F.2d at 573; *Board of Education v. Illinois Educational Labor Relations Board,* 170 Ill. App.3d 490, 120 Ill.Dec. 681, 685, 524 N.E.2d 711, 715 (1988); 3 Macneil, Speidel & Stipanowich, *supra,* § 37.6.6, p. 37:49. An award that fails to address a contingency that has arisen after the award was made is incomplete; alternatively, it is unclear; either way, it is within an exception to the doctrine.

The existence of such loopholes undermines the rationale for the doctrine because it tempts the parties to engage in ex parte contacts and because much alteration can be achieved in the name of interpretation. Since the case for the exceptions seems stronger than the case for the rule, perhaps the time has come to discard the rule. It is judge-made; it can be judge-unmade. Yet

despite our profound skepticism, we do not think that we should attempt to abrogate the doctrine of functus officio in this case—and not only because we have not been asked to do so. Were the doctrine as pointless as it seems to us to be, then probably either the rules of the various arbitration associations or arbitration clauses in particular contracts would authorize reconsideration. Functus officio is merely a default rule, operative if the parties fail to provide otherwise. There is no legal bar to authorizing arbitrators to reconsider their decisions, and some rules for arbitrators (though not those applicable to the arbitration in this case) do authorize reconsideration. 3 *id.,* § 37.6.4.2. But most do not. Sheer inertia, or for that matter the capaciousness of the exceptions for clarification and completion, may be responsible. But an alternative possibility that we must not ignore is that the people who are paying for arbitration believe it unwise to give arbitrators as broad a right to reconsider awards as might seem appropriate to us. Arbitration is a service sold in a competitive market. The rules adopted by the sellers are presumptively efficient.

 The present case is within the clarification-completion exception (or exceptions) to functus officio. Presumably, however, like the inherent power of courts and other public tribunals to reconsider their decisions, the power of arbitrators to clarify an award already made must be exercised within a reasonable period of time, *In re Met–L–Wood Corp., supra,* 861 F.2d at 1018, unless there is a fixed deadline, as there is for judges in Fed.R.Civ.P. 60(b)(1)–(3) or in the earlier judge-made rule that a court's power to alter its judgment expired at the end of the term of court in which the judgment had been made. *Bronson v. Schulten,* 104 U.S. 410, 415, 26 L.Ed. 797 (1882); *Henderson v. Carbondale Coal & Coke Co.,* 140 U.S. 25, 40, 11 S.Ct. 691, 696–97, 35 L.Ed. 332 (1891). In this case the award itself contemplated a period of up to 60 days before it would take full effect. And the informal motion to extend the period was "filed" with the arbitrator, and by him granted, within 30 days after the end of that period, before Jackson had completed the rehabilitation program that the arbitrator's initial award had invited him to enroll in. It could be argued that Jack-

son's termination as an employee of Excelsior "vested" on the sixty-first day after the award was rendered. But against this suggestion we point out that the union's first request for clarification (clarification as to who was to pay for the rehabilitation program) came within the 60 days. All things considered, we cannot say that July 30, which was 85 days after the rendition of the initial award, was too late for the arbitrator to be entitled to clarify the award.

But this is provided that there was no legal bar to the arbitrator's reconsidering the award when he did, no fixed deadline that expired before July 30. The employer points out that section 9 of the Uniform Arbitration Act, which is law in Illinois, allows only 20 days after the award for a party to request modification or correction. 710 ILCS 5/9. In pointing this out the employer asks us to embark on a perilous, fog-bound voyage. There are few more tangled issues than choice of law in arbitration cases. We can think of five potential sources for or against the arbitrator's authority to complete or clarify his decree in this case. Section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, which confers federal jurisdiction over contractual disputes arising out of collective bargaining. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* which confers federal jurisdiction to enforce arbitration awards involving interstate commerce or admiralty and which although formally inapplicable to labor arbitration is used as a source of principles to guide the formulation of a federal common law of labor arbitration under section 301. *United Paperworkers Int'l Union v. Misco, Inc., supra,* 484 U.S. at 40 n. 9, 108 S.Ct. at 372 n. 9; *American Postal Workers Union v. U.S. Postal Service,* 52 F.3d 359, 361–62 (D.C.Cir. 1995). The law of Illinois, where the arbitration took place. The rules of the American Arbitration Association, which the parties agreed to abide by. And finally the arbitration clause in the parties' collective bargaining agreement. Obviously, if private or state rules conflict with federal, the federal prevail. Beyond that, all is murky. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704 (7th Cir.1994); 1 Macneil, Speidel & Stipanowich, *supra,* § 10.8.3.2.

We can avoid the murk if, the employer to the contrary notwithstanding, section 9 of the Uniform Arbitration Act does not bar the request for reconsideration. The Act defines modification and correction so narrowly, 710 ILCS 5/13, as to seem to exclude requests for mere clarification. So the First Circuit held in interpreting a similar state law in *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Tel. & Tel. Co.*, 628 F.2d 644, 651 (1st Cir.1980). Nor is it apparent that the Act's failure to specify a deadline for requests for clarification is a pregnant silence meant to bar such requests altogether. But the Illinois courts interpret modification and correction very broadly, as embracing requests for clarification, *Kalish v. Illinois Education Ass'n*, 166 Ill.App.3d 406, 116 Ill.Dec. 816, 818, 519 N.E.2d 1031, 1033 (1988); see also *Ure v. Wangler Construction Co.*, 232 Ill.App.3d 492, 173 Ill.Dec. 785, 788, 597 N.E.2d 759, 762 (1992), thus bringing such requests within the 20–day deadline after all. The Illinois version of the Act is explicit, however, in excluding labor arbitration. 710 ILCS 5/12(e); *Chicago Transit Authority v. Amalgamated Transit Union*, 244 Ill.App.3d 854, 184 Ill.Dec. 919, 923, 614 N.E.2d 120, 124 (1993). That kills the employer's argument. Cf. *Board of Education v. Illinois Educational Labor Relations Board, supra*, 120 Ill.Dec. at 685–86, 524 N.E.2d at 715–16.

■ The only other question is whether, as the union urges, Jackson is entitled to backpay for the period since the arbitrator's modified award required that he be reinstated. Since he was entitled to reinstatement on that date, it is certainly arguable that an award of backpay is appropriate to place him in the financial position that he would have occupied had the employer not challenged the award. Cf. *Merit Ins. Co. v. Leatherby Ins. Co.*, 728 F.2d 943, 945 (7th Cir.1984) (per curiam); *Northrop Corp. v. Triad International Marketing S.A.*, 842 F.2d 1154 (9th Cir.1988) (per curiam). But this is another unanticipated contingency, gap, or incompleteness in the arbitrator's award: what would happen if Jackson was not reinstated, because the award was challenged? Arbitral awards sometimes make specific provision for such contingencies. E.g., *United Steel-*

*workers of America v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 969 (6th Cir.1990). When they do not, which as far as we are able to determine from the record before us is the situation here, the court is authorized to remand to the arbitrator. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. New Idea Farm Equipment Corp., supra*, 917 F.2d at 968–69; cf. *Galt v. Libbey–Owens–Ford Glass Co.*, 397 F.2d 439, 442 (7th Cir.1968); *York Research Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir.1991). It is just another example of how limited the doctrine of functus officio has become.

The judgment of the district court is reversed and the case is remanded with instructions to remand to the arbitrator for determination of the issue of backpay and otherwise to enforce the arbitrator's award.

REVERSED AND REMANDED.