# United States Court of Appeals
## For the First Circuit

No. 08-1679

EASTERN SEABOARD CONSTRUCTION CO., INC.

Plaintiff, Appellant,

v.

GRAY CONSTRUCTION, INC.; TRAVELERS CASUALTY AND INSURANCE COMPANY
OF AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Gavin G. McCarthy with whom Michael P. Murphy, Pierce Atwood
LLP, and Regnante, Sterio & Osborne LLP were on brief for
appellant.
John A. Hobson with whom Perkins Thompson, P.A. was on brief
for appellees.

December 31, 2008

**STAHL**, **Circuit Judge**. Eastern Seaboard Concrete Construction Company ("Eastern") appeals the district court decision vacating an amended arbitration award and denying Eastern prejudgment interest on its award.

## I.

The background facts of this case are thoroughly discussed in the magistrate judge's Recommended Decision, see E. Seaboard Concrete Constr. Co. v. Gray Constr. Inc., 2008 WL 1803781 (D. Me. 2008). For our purposes, Gray Construction ("Gray"), the prime contractor on a construction project at the Portsmouth Naval Shipyard in Kittery, Maine, contracted with Eastern to perform the site work at the project. A dispute arose when Eastern encountered unexpected conditions that increased the project's scope and as a result, put the job behind schedule. When the Navy refused to pay Gray for the extra work and Gray in turn refused to pay Eastern, Eastern left the job, returned briefly, and ultimately was terminated by Gray. Gray then hired replacement subcontractors and suppliers to complete Eastern's scope of the work.

Eastern filed a complaint premised on the Miller Act, 40 U.S.C. § 3131 et seq., which requires surety bonds on federal construction projects, against Gray in federal district court in Maine. Gray counterclaimed and simultaneously motioned to stay the proceedings because Eastern had not exhausted the parties' contractual and administrative remedies pursuant to the parties'

subcontract.  The parties then agreed to submit the case to arbitration pursuant to the arbitration clause in their contract and later voluntarily dismissed the court action to permit the arbitration to proceed on a more extended basis.  Eastern and Gray agreed that the American Arbitration Association's Construction Industry Arbitration Rules and Mediation Procedures ("AAA Rules") would apply to the proceeding.

Following the arbitration proceedings in May 2007, the arbitrator issued a nine-page arbitration award on September 21, 2007.  Noting that "[t]o the extent that an issue or claim is not explicitly discussed and resolved, it is denied," the arbitrator awarded Eastern recovery on all but one of its claims, and he also determined that Eastern breached its contract by abandoning its work and awarded Gray $77,000 for the completion of the contract, "to be deducted from the award paid to Eastern Seaboard."  The arbitrator rejected Eastern's contention that it was entitled to interest under a Federal Prompt Payment Act interest penalty, 31 U.S.C. §§ 3901-3907, or its implementing regulations.

Eastern then filed an Application for Clarification of the Arbitration Award and sought to have the $77,000 award to Gray reduced by $66,613.89, the amount remaining on the parties' subcontract.  Eastern previously had alerted the arbitrator to this amount in its Post-Trial Brief in which it observed, "The Parties

do not dispute that there was $66,613.81 remaining under the base contract."

Gray, in its Post-Hearing Arbitration Brief, had contended that it was not in breach of contract for non-payment. Gray made three independent arguments in its defense. First, it noted the pay-when-paid clause of the contract. Second, it stated that Eastern "had effectively already been paid the sums in question by virtue of Gray's overpayment on the base contract." Finally, Gray suggested that even if Eastern had not been paid for the work, the contract permitted Gray to withhold payment "when there is reasonable doubt that [Eastern] could complete the Work on time, was satisfactorily prosecuting the Work, or that the Work could be completed for the unpaid balance of the subcontract price." While the arbitrator's initial award disposed of Gray's first defense, finding that the pay-when-paid clause was unenforceable under the Miller Act, it did not address Gray's other arguments.

On November 4, 2007, acknowledging that "[t]he award could have been clearer," the arbitrator issued an amended arbitration award and adopted Eastern's request, noting that "Gray does not seriously dispute the $66,613.89 figure." He also cited Section 11.2 of the contract which required that any unpaid contract balance owed to the subcontractor be offset by the cost of

completing the subcontractor's work, "which is precisely what is being awarded here."

Gray moved to vacate the award, and Eastern filed a cross-motion to confirm the award and requested the court award prejudgment interest. On April 18, 2008, the magistrate judge recommended a decision granting Gray's motion to vacate, finding that AAA Rule R-47 ("Rule 47") prohibited the substantive modifications in the amended award. She also determined that Eastern was not entitled to interest before the date of the award. On May 23, 2008, the district court affirmed the magistrate's decision after de novo review. Eastern now appeals the decision.

## II.

We review the district court's decision to vacate the arbitral award de novo. UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008). Our consideration of the award is "extremely narrow and exceedingly deferential," Wheelabrator Envirotech Operating Servs. Inc. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996) (citations omitted), such that our de novo review is "among the narrowest known in the law," Me. Cent. R. Co. v. Bhd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989) (citations omitted). Indeed, we have recognized that "[a]rbitral awards are nearly impervious to judicial oversight." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir.

2000) (citations omitted). Thus, "[a] court's review of an arbitration award is highly deferential because the parties 'have contracted to have disputes settled by an arbitrator' and thus, 'it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.'" Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987)).

"Courts must accord substantial deference to the decisions of arbitrators. Nevertheless, there are limits to that deference." Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 70 (1st Cir. 2008). Section 10 of the Federal Arbitration Act ("FAA") permits courts to vacate arbitrators' awards "[w]here the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Because "arbitration is simply a matter of contract between the parties," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995), we look to the parties' contract to determine the powers the parties intended to bestow upon the arbitrator. "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1999). A court may reverse an arbitrator's award on contractual grounds only "where an award is contrary to the plain language of the [contract]" and in "instances where it is clear

from the record that the arbitrator recognized the applicable law -- and then ignored it." Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir. 1990) (citations omitted). We thus proceed to determine whether the arbitrator exceeded his authority in the instant case.

Eastern and Gray agreed that the AAA Rules would govern the arbitration process.[1] Hence, the AAA Rules "became part and parcel of the arbitration contract." Mscisz, 531 F.3d at 77 (citing 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2008)). AAA Rule 47 reads as follows:

> Within twenty calendar days after the transmittal of an award, the arbitrator on his or her initiative, or any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical, technical or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

Gray argues that Rule 47 precluded the arbitrator from revisiting his initial award and reducing Gray's award by $66,613.89. We disagree.

While previously we have not had occasion to consider the application of Rule 47, we have discussed more generally the functus officio doctrine[2] and an arbitrator's ability to revisit an

---

[1] Notwithstanding Eastern's argument to the contrary, the AAA Rules and the FAA govern the scope of the arbitrator's authority to amend the award. Mastrobuono, 514 U.S. at 58, 63-64. See also Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478-79 (1989).

[2] This common law doctrine refers to the exhaustion of the arbitrator's powers which precludes him "from vacating, modifying, supplementing, or correcting his award." Courier-Citizen Co. v.

award, recently noting that "the question whether and when an arbitrator may reverse or substantially alter his ruling is perhaps an open one." Local 2322, Int'l Bhd. v. Verizon New England, Inc., 464 F.3d 93, 97-98 (1st Cir. 2006) (citations omitted). See also Glass, Molders, Pottery, Plastics, and Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d 844, 846 (7th Cir. 1995) (noting that the functus officio doctrine "[t]oday, [is] riddled with exceptions . . . [and] is hanging on by its fingernails"). Our cases still tend to differentiate between a second award which is "fundamentally inconsistent with the first award" and one which "simply flesh[es] out the remedy announced initially." Courier-Citizen Co., 702 F.2d at 279; Verizon, 464 F.3d at 98 (distinguishing between "clarify" and "alter"). Thus, we have permitted an arbitrator to clarify whether an award to make whole an employee includes a back pay remedy. Verizon, 464 F.3d at 100; Locals 2222 v. New England Telephone and Telegraph Co., 628 F.2d 644, 649 (1st Cir. 1980). See also Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999) (finding an amendment to the award ministerial where the arbitrator first incorrectly listed New York law as governing the arbitration and then revised the award to delete the New York references and replace with Massachusetts).

---

Boston Electrotypers Union No. 11, 702 F.2d 273, 278 (1st Cir. 1983).

We find in our sister circuits further evidence of "how limited the doctrine of functus officio has become." Excelsior, 56 F.3d at 849. For example, in La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 570 (3d Cir. 1967), a case not unlike our own, the arbitrators proceeded according to the AAA Rules and awarded Noonan $30,861.64 "in full settlement of all claims submitted to this arbitration one against the other." The arbitrators did not, however, discuss $56,429.66 that La Vale had delivered to Noonan in anticipation of the arbitration, and La Vale brought an action to recover $25,568.02, the difference between the award and its deposit. Id. The Third Circuit, after discussing the functus officio doctrine, held that the arbitrators should "remove the cloud of doubt as to whether they considered the payment of $56,429.66 in making their award" as it "will in no way reopen the merits of the controversy." Id. at 573. The court explained, "Where the award, though seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." Id. See also Excelsior, 56 F.3d at 847-49 (holding that neither the AAA Rules nor functus officio barred an arbitrator from clarifying his award to explain which party was responsible for the costs of a rehabilitative program); Kennecott Utah Cooper Corp. v. Becker, 186 F.3d 1261, 1271-72 (10th Cir. 1999) (permitting arbitrator to explain whether he intended to include back pay in the award); Int'l Bhd. of

Teamsters, Chauffeurs, Warehousemen, and Helpers of Am. v. Silver State Disposal Serv., Inc., 109 F.3d 1409, 1411 (9th Cir. 1997) (same); Chase v. Cohen, 519 F. Supp. 2d 267, 280-81 (D. Conn. 2007) (citing Rule 47 to permit the arbitrator to add the first names of the parties to the award to clarify joint and several liability).

In the present case, the arbitrator issued what appeared to be a complete award. But as the Seventh Circuit observed, arbitrators can "leave much to implication and assumption," Excelsior, 56 F.3d at 847, and the arbitrator, as he acknowledged in his amended award, failed to make clear that his award to Eastern included the $66,613.89 still owed for work performed on the contract. In its Post-Trial Brief, before the arbitrator issued his initial award, Eastern noted that "[t]he parties do not dispute that there was $66,613.89 remaining under the base contract." After Eastern moved to clarify the award, the arbitrator in his amended arbitration award observed that "Gray does not seriously dispute" the $66,613.89 figure and that failure to offset the $77,000 would result in a "windfall" to Gray.

We acknowledge that whether this amended award exceeded the arbitrator's authority under Rule 47 and therefore justified the district court's decision to vacate the award is a close question. The arbitration record before us is sparse. We do not know what arguments were made before the arbitrator during the hearings nor can we review the exhibits submitted for his

-10-

consideration to ascertain whether the $66,613.89 was discussed. But good evidence as to whether the $66,613.89 was discussed during the arbitration can be found in Gray's own representations to this court in which it did not take issue with Eastern's claim that the contract balance of $66,613.89 was undisputed. Instead, Gray primarily argued that the arbitrator's initial award was not ambiguous and therefore did not require clarification. As the case law reveals, this kind of assertion belies the reality that even seemingly complete awards may omit information or overlook contingencies, failures that AAA Rule 47 would allow the arbitrator to remedy.

"Judicial intrusion is restricted to extraordinary situations indicating abuse of arbitral power." Raytheon Co. v. Computer Distrib., Inc., 632 F. Supp. 553, 557 (D. Mass. 1986) (citing Mobil Oil v. Oil, Chem. and Atomic Workers Int'l Union, 600 F.3d 322, 326 (1st Cir. 1979)). If the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38. In the amended arbitration award, the arbitrator expressly confirmed Eastern's assertion that Gray did not dispute the $66,613.89 contract balance during arbitration. Given our deferential review of arbitration awards, it is not within the purview of this court to question such an assertion. Instead, we

-11-

think the arbitrator's statement provides evidence adequate to show that he did not exceed his authority under Rule 47. Assuming the veracity of his statement, as we must, and given the lack of evidence to the contrary, we believe the arbitrator's omission of the $66,613.89 contract balance in the initial award, rather than a redetermination of the merits, was the type of "clerical, typographical, technical or computational error[]" which AAA Rule 47 permitted him to amend or clarify. The amendment did not reopen the merits of the case. Rather, it clarified a latent ambiguity. See La Vale, 378 F.2d at 573.

## III.

Eastern also requests that we vacate the arbitrator's award insofar as it denied prejudgment interest. We summarily can address this claim. AAA Rule R-44(d), which, as discussed above, governed this arbitration, dictates that "the arbitrator may include interest at such a rate and from such a date as the arbitrator may deem appropriate." The parties contracted to provide the arbitrator with this discretionary power. Eastern did not within three months request modification of the award with respect to the denial of prejudgment interest, see 9 U.S.C. § 12, and therefore, it is bound by the award. The district court therefore rightly declined to upset the arbitrator's decision regarding prejudgment interest.

-12-

**IV.**

For the foregoing reasons, the district court's decision is **affirmed** in part and **reversed** in part, and this case is **remanded** for entry of an order affirming the amended arbitration award in its entirety.