BOARD OF EDUCATION OF HARRISBURG COMMUNITY UNIT SCHOOL DISTRICT No. 3, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—91—0555

Opinion filed April 15, 1992.

John T. Taylor and Merry C. Rhoades, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Alison O'Hara, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Wanda VanPelt, Associate General Counsel, of Edwardsville, for respondent Harrisburg Education Association.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case arises from action by petitioner Harrisburg Community Unit School District No. 3 (District) terminating the assignment of its teacher Anthony Holler from an extra-duty position as head boys' basketball coach at its high school at the conclusion of the 1989-90 season. Following a three-step internal grievance procedure, the propriety of the termination of the extracurricular assignment was submitted to arbitration pursuant to the terms of a collective-bargaining agreement between the District and the exclusive representative of the educational employees of the District, respondent Harrisburg Education Association, IEA-NEA (Association). The arbitrator ruled the District had violated the collective-bargaining agreement by failing to afford Holler the "due process" to which he was entitled by that agreement. The arbitrator ordered the District to restore Holler

to the extracurricular coaching position with back pay and reimbursement of other benefits which may have been lost by the dismissal from that extra-duty assignment.

■■ The appropriate method for an educational employer to contest, in good faith, the validity of an arbitration award made under the provisions of a collective-bargaining agreement is to refuse to abide by the award, thereby subjecting itself to unfair labor charges under section 14(a)(8) and derivatively section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, pars. 1714(a)(1), (a)(8)) so that the validity of the award may be determined. (*Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149.) Section 14(a)(8) of the Act makes the refusal of an employer to abide by a binding arbitration award an unfair labor practice, and section 14(a)(1) of the Act makes any conduct by an employer "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under [the] Act" an unfair labor practice. (Ill. Rev. Stat. 1989, ch. 48, par. 1714(a)(1).) The District chose to contest the arbitration award in this manner and refused to abide by the award. On September 14, 1990, the Association filed a complaint with the Illinois Educational Labor Relations Board (IELRB) charging the District with violations of those provisions.

Following a hearing before an IELRB hearing officer, that officer issued a recommended decision and order which found violations by the District of section 14(a)(8) and, derivatively, section 14(a)(1) of the Act. That officer found the arbitrator's award valid and recommended *inter alia* that the District be ordered to reinstate Holler to his extracurricular coaching assignment with back pay and compensation for benefits of which he might have been deprived. (*Harrisburg Community Unit School District No. 3*, 7 Pub. Employee Rep. (Ill.) par. 1037, No. 91—C A—001?—S (Illinois Educational Labor Relations Board, hearing officer's recommended decision and order, Mar. 7, 1991).) On July 8, 1991, the IELRB entered an opinion and order affirming the hearing officer's conclusions and adopting his recommended order and rationale as supplemented by its opinion. *Harrisburg Community Unit School District No. 3*, 7 Pub. Employee Rep. (Ill.) par. 1084, No. 91—CA—0013—S (Illinois Educational Labor Relations Board, July 8, 1991) (hereinafter 7 Pub. Employee Rep. (Ill.) par. 1084).

The District has taken administrative review to this court. (Ill. Rev. Stat. 1989, ch. 48, par. 1716(c).) It phrases its contentions under headings asserting (1) it did not commit an unfair labor practice, and (2) the arbitrator exceeded his authority in making the award. Under

the first point, the District maintains the arbitrator's decision violates public policy and that Holler was in fact afforded the "due process" to which he was entitled under the collective-bargaining agreement.

■ As we are passing upon the propriety of an administrative agency's ruling in regard to the validity of an arbitration award, two standards of review are involved. The parties do not dispute that " '[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.' " (*American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 255, 529 N.E.2d 534, 538 (hereinafter *AFSCME*), quoting *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, 37-38, 98 L. Ed. 2d 286, 299, 108 S. Ct. 364, 370.) However, an exception to that rule occurs if the award is, as contended by the District, contrary to public policy. *AFSCME*, 124 Ill. 2d at 259, 529 N.E.2d at 540.

Another exception to the deference given the award occurs if the arbitrator goes beyond the terms of the agreement " 'to dispense his own brand of industrial justice.' " *AFSCME*, 124 Ill. 2d at 254-55, 529 N.E.2d at 538, quoting *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361.

■ As the facts before the IELRB are not in dispute, the applicable standard of review of the IELRB decision is straightforward, *i.e.*, we give considerable deference to its expertise in matters of labor law as related to educational institutions (*Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board* (1989), 180 Ill. App. 3d 770, 775, 536 N.E.2d 743, 746), but will not follow its decision if, after giving that deference, we deem the decision erroneous as a matter of law. *Hardin County Education Association v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 174, 528 N.E.2d 737, 740.

The parties agree the collective-bargaining agreement states in section 6.4:

> "Due process under the Agreement shall be accorded each teacher, administrator, and the Board, and the rights of each teacher, administrator, and the Board of Education shall be honored as provided for in this Agreement."

The application of section 6.4 is at the heart of this dispute. The arbitrator found that the District violated this provision in not giving adequate opportunity to Holler to appear before its governing board (Board) before terminating his extracurricular assignment. The

IELRB held that the arbitrator was properly proceeding within his power in making this determination, and we agree. 7 Pub. Employee Rep. (Ill.) par. 1084, at IX—318.

The arbitrator also mentioned in his written decision that arbitrators often "read into" collective-bargaining agreements language requiring "just cause" for dismissal of employees. In that portion of the decision explaining the reasons for the remedy imposed, the arbitrator stated that to merely grant Holler a proper hearing before the District's governing board, "allowing his removal [from the extra-duty assignment] to stand" would have the effect of assuming "that just cause for his dismissal [from the extra-duty assignment] exists." The IELRB noted that the record showed that in negotiating the collective-bargaining agreement, the Association had requested a "just cause" provision for discipline or discharge of teachers and that provision had not been agreed to by the District. We emphasize, as did the arbitrator, that no such language was in the contract. The only provision which limited the District's managerial rights and rights to make involuntary changes in regard to extracurricular assignments was the due process provision.

The IELRB opinion and order considered the first statement by the arbitrator concerning "just cause" as *obiter dictum*. We agree. However, that opinion and order also concluded that the statement concerning "just cause" in regard to remedy was just "in passing" and harmless. (7 Pub. Employee Rep. (Ill.) par. 1084, at IX—319.) For reasons we will explain, we disagree with this interpretation. We conclude that the arbitrator formulated a remedy on the basis that "just cause" would be necessary to terminate Holler from his extra-duty coaching position. That requirement had specifically been rejected in the bargaining. Accordingly, we uphold the requirement that a "due process" hearing must be granted Holler, but for reasons we will explain we hold that the arbitrator must redetermine the remedy without consideration of "just cause" being a contractual requirement for termination from extracurricular assignments.

The parties do not dispute that we are bound by the following statement of facts found by the arbitrator: (1) Holler had been a teacher at Harrisburg for nine years and a high school head basketball coach for eight of those years; (2) the extra-duty coaching position carried an extra-duty pay of 15% of Holler's base salary, for a total of $2,500 to $3,000 per year; (3) sometime during the first week of January 1990, athletic director Jim Collins met with Holler at the request of Superintendent Randolph Tinder to tell Holler of four "concerns" the Board had regarding Holler's extra-duty coaching activities; (4)

Tinder learned of these concerns at a special meeting of the Board in December; (5) at that meeting, the Board had discussed the possibility of dismissing Holler from his extra-duty coaching position in mid-season, but Tinder advised against it.

Similarly before us are the arbitrator's findings that (1) Tinder assured Holler there would be no mid-season dismissal when the two met in January; (2) at that January meeting, Tinder asked Holler to submit a letter of resignation from the extracurricular assignment, but Holler refused, saying the Board would have to fire him; (3) early in March, Tinder told Holler his name had appeared on the Board's executive agenda for that month, and the Board would probably dismiss him from his extra-duty coaching position; (4) Tinder told Holler he could attend the meeting if he wished; (5) Holler did not attend the meeting nor did he ask to meet with the Board; and (6) Holler was dismissed as head basketball coach at the Board's March meeting, and no reasons were given.

The arbitrator found the four "concerns" relayed to Holler by Collins in January were as follows: (1) comments had reached the Board that a freshman coach had used profanity in the presence of students; (2) a coach had used a stopwatch to keep track of the number of minutes each player was in the game; (3) former varsity players had been brought in to practice against the varsity, thereby cutting the practice time of the junior varsity; and (4) "words" had been exchanged between a Harrisburg player and a Benton player and then between the respective coaches.

The major thrust of the District's position in regard to the question of whether it furnished Holler "due process" within the meaning of the collective-bargaining agreement is its argument that Holler had sufficient procedural protections to meet fourteenth amendment due process requirements. The District notes he had (1) oral notice of the fact that he faced dismissal from the extracurricular assignment, (2) an opportunity to present his position to his employer, and (3) an explanation of the faults which the employer had expressed as to his work. (See *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495.) The District also notes that under the collective-bargaining agreement, no showing of cause was necessary to terminate Holler's extra-duty coaching assignment.

The weakness in the District's argument is that the arbitrator had the power to determine that "due process" within the meaning of the collective-bargaining agreement required a more formalized procedure than is required by the fourteenth amendment. The procedure used

was very loose and informal. Although the evidence showed Tinder told Holler he could come to a Board meeting, the evidence did not indicate Tinder had said Holler would then be allowed to speak. The arbitrator's decision as to what the District should have done in the way of affording a hearing is not entirely clear. Apparently, he ruled the District should have (1) given Holler more explicit information as to the time and place when he could be heard by the Board; (2) told him what the subject matter of the meeting would be; (3) told him of complaints which the District had against him; and (4) informed him he would have a right to speak and a right to be represented, which could be by the Association.

We do not agree with the District that the decision required it to force Holler to come to a meeting with the Board before it could discharge him. The benefits of a more formal procedure would have been somewhat limited, because the District could discharge him from the extra-duty assignment without cause. However, he was entitled to some formality in a procedure in which he might have been able to persuade the Board to retain him.

The Association and IELRB maintain the District has waived its contention that the arbitrator's decision was void for being contrary to public policy by its failure to properly raise this point earlier. We need not decide this question, because we do not agree with the District's argument on the point. This court has invalidated, as contrary to public policy, awards by arbitrators operating under collective-bargaining agreements when the awards set aside the discharge of employees in *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board* (1991), 216 Ill. App. 3d 990, 576 N.E.2d 471, and *Department of Central Management Services v. American Federation of State, County & Municipal Employees* (1990), 197 Ill. App. 3d 503, 554 N.E.2d 759. In the former case, the employee was a bus driver shown to have driven a school bus recklessly on several occasions. In the latter case, the employees were correctional officers who had either battered prisoners or used drugs with prisoners. Nothing of that compelling nature was involved here. Rather, the stated complaints against Holler seemed quite minor.

The District agrees the aforementioned public policy cases are not analogous to the situation here, but maintains that *Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 441 N.E.2d 1333, is analogous. There, an arbitrator made an award which took into consideration damages awardable for breach of a covenant of noncompetition granted by a former part owner of a racquet club upon his withdrawal from the enterprise. In an appeal from a circuit

court decision reviewing the award under the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, pars. 112, 113), the appellate court held that the anticompetition covenant violated public policy, and the award was erroneous to that extent. (*Konicki*, 110 Ill. App. 3d at 224, 441 N.E.2d at 1338.) Here, the award arose from the collective-bargaining agreement, and that agreement was not contrary to public policy. We do not find that *Konicki* speaks to the issues here.

■ If the District's contention of a violation of public policy is based upon a theory that the arbitrator's determination that the "due process" provision of the collective-bargaining agreement is more expansive than the constitutional due process concepts, we simply disagree. The parties could so agree, and the arbitrator was acting within his authority in determining that was intended. The arbitrator's decision was therefore not contrary to public policy.

■ As we have indicated, we do, however, agree with the District that the arbitrator exceeded his authority in considering the existence of a requirement of "just cause" in order for the District to discharge Holler from his extra-duty position in the face of the showing in the record that, in bargaining, the District had refused a request by the Association that teachers could not be discharged or disciplined without "just cause." Notwithstanding this fact, after concluding that the District's power to properly relieve Holler of his extracurricular assignment was subject to the "due process" provision of the agreement, the arbitrator's decision then stated:

> "Further, arbitrators commonly read just cause language into collective bargaining agreements even if the explicit wording is not there. Otherwise, an employer could avoid the benefits and guarantees which the agreement gives to employees by discharging without cause. Employment becomes 'at will' which the collective bargaining agreement seeks to avoid. (See Elkouri and Elkouri, *How Arbitration Works* 4th ed., p. 652, especially *Cameron Iron Works* 25 LA 295 (1955) cited there.)"

The above is the portion of the decision which both IELRB and this court consider *obiter dictum*. Our disagreement with IELRB concerns the significance of a later portion of the decision, which states:

> "Remedy
>
> Due process rights are so important that their violation entitles Mr. Holler to be restored to his coaching position. It would be insufficient to order only a hearing before the Board, allowing his removal to stand. *To do so would assume that just cause for his dismissal exists* and that the hearing would satisfy all

due process requirements of the agreement." (Emphasis added.)

The only reasonable interpretation we can give to the "Remedy" portion of the decision is that the arbitrator deemed merely awarding Holler a new hearing conforming with "due process" and reimbursing him for losses during the period between his discharge from the extra-duty assignment and the date of a new hearing were inadequate, because at a hearing granting Holler all the rights to which he was entitled the District might still discharge him without having "just cause" to do so. We hold that in considering this factor in the formulation of his remedy, the arbitrator went beyond the terms of the collective-bargaining agreement and violated the admonition of *Enterprise Wheel* and *AFSCME* not to go beyond the terms of the collective-bargaining agreement and " 'dispense his own brand of industrial justice.' " *AFSCME*, 124 Ill. 2d at 254-55, 529 N.E.2d at 538, quoting *Enterprise Wheel*, 363 U.S. at 597, 4 L. Ed. 2d at 1428, 80 S. Ct. at 1361.

Accordingly, we affirm the decision to the extent that it upholds the arbitrator's determination that the District violated Holler's contractual right of due process, but we must reverse that portion of the determination which upholds the remedy imposed. We remand to the IELRB with directions to remand to the arbitrator to determine a remedy which is not formulated upon an assumption that Holler's extracurricular assignment may not be terminated without "just cause." Nothing we have stated here is intended to prevent a remedy which requires the District to compensate Holler for monetary losses suffered between the time of his dismissal and the time he is afforded a hearing complying with contractual "due process" as determined by the arbitrator.

As we determine that the remedy imposed by the award was invalid as a matter of law, we reverse the determination by the IELRB that the District has engaged in unfair labor practices and the cease and desist and affirmative action portions of its decision. Upon the issuance of new remedies in a new award, the District will be under a duty to abide by that award or to initiate the same appeal process undertaken here. We hope we have spoken with sufficient clarity to all parties that further litigation will be unnecessary.

Affirmed in part; reversed in part and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.