SIXTH DIVISION

     November 7, 2003

No. 1-02-1077

CHICAGO TEACHERS UNION, LOCAL1, AMERICAN FEDERATION OF TEACHERS, AFL-CIO,

Petitioner-Appellant,

v.

ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and CHICAGO BOARD OF EDUCATION,

Respondents-Appellees.

))))))))))))

On Petition for Review of an Opinion and Order of the Illinois Educational Labor Relations Board

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal challenges a decision of the Illinois Educational Labor Relations Board (IELRB) regarding an unfair labor practice charge brought by the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO (Union), against the Chicago Board of Education (school board) for failing to comply with an arbitrator's decision.  We reverse and remand.

Betty Jean Pittard (Pittard) was a tenured Chicago schoolteacher whose position was eliminated after a decline in attendance at her school.  
After Pittard's position was closed, she was designated a reserve or reassigned teacher.  
In
 effect at the time was the school board's 
“reassignment policy” that allowed the reserve or reassigned teacher to spend the first 30 days after removal from her position seeking a permanent position.  The policy further provided that if the teacher did not succeed in obtaining a permanent position during that period, she was to be employed as a day-to-day substitute teacher four days a week, with the remaining day available to set up appointments and go to schools for interviews.  The reassignment policy required the school board's department of human resources to “provide the teacher with a list of all unencumbered vacant positions for which he or she is qualified” and, upon written request, to further provide “a copy of the list of vacancies in any area identified by the department to be an area of systemic critical need.”  The board must also “make available to affected teachers lists of vacancies, job counseling and assistance with resume writing and interviewing skills.”  Under the policy, if a teacher is unable to obtain a permanent appointment to a teaching position within 10 months after her position was closed, the teacher will be laid off and given an honorable termination.

After the 10-month period ended, Pittard had not obtained a permanent assignment to a teaching position and was honorably discharged on August 27, 1999.  On September 10, 1999, the Union filed a grievance, on behalf of Pittard, pursuant to the collective bargaining agreement between the school board and the Union.  
Article 3 of the collective bargaining agreement defines a grievance, in pertinent part, as “a complaint that there has been a deviation from, misinterpretation of, or misapplication of a practice or policy.”
  
The Union contended that the school board, in terminating Pittard without providing her assistance in obtaining a permanent position, had violated the reassignment policy.  The school board denied the grievance.

On December 2, 1999, the Union demanded arbitration of the grievance.  On March 2, 2000, a hearing was held before an arbitrator.  The school board took the position that the grievance was substantively inarbitrable in its entirety and chose to present no evidence.  The arbitrator deferred the issue of whether the dispute was arbitrable to the IELRB.  The uncontroverted testimony before the arbitrator established that the school board, contrary to its own reassignment policy, gave Pittard no assistance in obtaining a permanent position.  The arbitrator found that the school board had violated its policy “when it failed to afford [Pittard] the opportunities and information mandated by the policy.”  The arbitrator awarded reinstatement of Pittard to the status of reserve teacher and ordered the school board to afford Pittard the assistance in her job search that the school board's policy mandates.  The school board refused to comply with the arbitrator's award, maintaining its position that the dispute was not arbitrable and that the arbitrator's award was not binding.

On August 2, 2000, the Union filed an unfair labor practice charge with the IELRB.  The Union claimed that the school board, by failing to comply with the arbitrator's award, had violated sections 14(a)(1) and 14(a)(8) of the Illinois Educational Labor Relations Act (the Act).
(footnote: 1) 115 ILCS 5/14(a)(1), 14(a)(8) (West 2000).  The school board responded by maintaining its position that 
the dispute was inarbitrable
 and it did not have to comply with the award.

On June 4, 2001, an administrative law judge (ALJ) issued a recommended decision and order, recommending that the school board be held to have violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act by not complying with the arbitrator's award.  On June 25, 2001, the school board filed exceptions to the ALJ's recommended decision and order, and a supporting brief.

On March 14, 2002, the IELRB issued its final order.  The IELRB decided, first, that the matter was arbitrable.  The IELRB, however, agreed with the school board that the arbitrator's award was not binding.  Nonetheless, the IELRB remanded the matter to the arbitrator to formulate an alternative remedy.  This direct appeal by the Union followed.  We granted leave to submit 
amicus curiae
 briefs in support of the Union to the Illinois Education Association-NEA, as well as Local 73, Service Employees International Union; Local 7, Firemen and Oilers; Local 143, International Union of Operating Engineers; Local 726, International Brotherhood of Teamsters; and Local 1, Hotel and Restaurant Employees International Union.

JURISDICTION

A threshold issue to be considered is whether this court has jurisdiction over this appeal.  The school board asserts that this court lacks jurisdiction because the IELRB's order remanding the matter to the arbitrator was not a final order.  The school board additionally argues, however, that the IELRB has no remand authority, in the first instance.  As the IELRB correctly notes in its brief, the determination of this court's jurisdiction is intertwined with the question of whether the IELRB may ever remand a matter to an arbitrator.

We shall first address the issue of whether the IELRB has the authority to remand a matter to an arbitrator.  Section 15 of the Act, which defines the procedure for handling an unfair labor practice complaint, states, in pertinent part, as follows:

“Unfair labor practice procedure. ***

* * * 

If the Board finds that the party charged has committed an unfair labor practice, it shall make findings of fact and is empowered to issue an order requiring the party charged to stop the unfair practice, and may take additional affirmative action, including requiring the party to make reports from time to time showing the extent to which he or she has complied with the order. ***  If the Board finds that the party charged has not committed any unfair labor practice, findings of fact shall be made and an order issued dismissing the charges.” 115 ILCS 5/15 (West 2000).

The school board argues that the language in section 15 of the Act, which specifically provides that “[i]f the Board finds that the party charged has not committed any unfair labor practice, findings of fact shall be made and an order issued dismissing the charges” (115 ILCS 5/15) (West 2000)), requires that the IELRB, once it found that the school board did not commit an unfair labor practice by not complying with a nonbinding award of reinstatement, 
should have
 just dismissed the charges of an unfair labor practice.
  The school board further asserts that the IELRB exceeded its authority by remanding the case to the arbitrator and this court has a duty to vacate the IELRB's remand order as void for lack of jurisdiction (presumably leaving Pittard without a remedy for the school board's uncontested violation of its policy).  We do not agree.

In the usual case, the IELRB “ultimately issues an order either finding an unfair labor practice and providing a remedy, or deciding the allegation of an unfair labor practice was unfounded.” 
Niles Township High School District 219 Board of Education v. Niles Township Federation of Teachers, Local 1274
, 295 Ill. App. 3d  510, 512, 692 N.E.2d 700, 702 (1997).  In the instant case, however, the IELRB did not issue an order dismissing the charges.  Although the IELRB determined that the school board did not have to comply with what it had concluded was a nonbinding arbitration award, the IELRB recognized that a binding award was still required.  In its decision, the IELRB expressly found that Pittard's grievance regarding the school board's failure to follow its reassignment policy 
was
 arbitrable and it accepted the findings of the arbitrator, as to the merits of the grievance, that the school board had violated its policy.  In order that Pittard receive a remedy for her valid grievance, the IELRB remanded the matter to the arbitrator to fashion an alternative remedy.
  We conclude that this was a valid exercise of the IELRB's statutory authority.

We agree with the IELRB that, by expressly giving the IELRB the authority to “take additional affirmative action” (115 ILCS 5/15 (West 2000)) when addressing unfair labor practices, the General Assembly intended to confer upon it broad powers.  
The two sentences in section 15 outlining the action to be taken (1) where the IELRB 
does
 find an unfair labor practice has occurred and (2) where the IELRB 
does not
 so find, are separate sentences, 
are not written in the disjunctive,
 and are not necessarily mutually exclusive.  We conclude that section 15 of the Act cannot be interpreted to confine the IELRB to merely declaring that an unfair labor practice has, or has not occurred, but instead that the IELRB has extensive supervisory powers over labor disputes.

When the Act replaced circuit courts with the IELRB as the entity responsible for adjudicating labor arbitration disputes involving public school employees, it did not eliminate, but instead reaffirmed, the power to remand such disputes to the arbitrator.  Under the common law, an arbitration award entered pursuant to a collective bargaining agreement could be reviewed by the courts where the arbitrator had exceeded his authority. 
Board of Trustees of Junior College District No. 508, County of Cook v. Cook County College Teachers Union, Local 1600
, 22 Ill. App. 3d  1066, 318 N.E.2d 202 (1974), 
rev'd on other grounds
, 62 Ill. 2d  470, 343 N.E.2d 473 (1976).  Courts have also historically exercised the power to remand a matter to an arbitrator in limited circumstances, such as where the award is obviously incomplete or ambiguous. See, 
e.g.
, 
Board of Trustees of Junior College District No. 508, Cook County
 v. Cook County College Teachers Union, Local 1600
, 96 Ill. App. 3d 913, 917, 422 N.E.2d 115, 119 (1981).

Consistent with this statutory scheme, this court in 
Board of Education of Harrisburg Community Unit School District No. 3 v. Illinois Educational Labor Relations Board
, 227 Ill. App. 3d  208, 591 N.E.2d 85 (1992), expressly approved the IELRB's power to remand a labor dispute to an arbitrator where the law required such a result.  
Harrisburg
 involved the termination of a teacher's extracurricular assignment which, under the collective bargaining agreement, could be terminated without a showing of “just cause,” but only after a “due process” hearing.  The school district terminated the assignment without such a hearing.  The arbitrator subsequently ordered the assignment reinstated on the ground that allowing its termination to stand “would have the effect of assuming 'that just cause for [the termination] exist[ed].'” 
Harrisburg
, 227 Ill. App. 3d at 212, 591 N.E.2d at 87-88.  Finding this remedy contrary to the scope of the arbitrator's authority under the collective bargaining agreement, and invalid as a matter of law, the court affirmed the IELRB's decision “to the extent that it upholds the arbitrator's determination that the District violated [the teacher's] contractual right of due process, but *** reverse[d] that portion of the determination which upholds the remedy imposed.” 
Harrisburg
, 227 Ill. App. 3d at 216, 591 N.E.2d at 90.  The court remanded the matter to the IELRB “with directions to remand to the arbitrator to determine a remedy which is not formulated upon an assumption that Holler's extracurricular assignment may not be terminated without 'just cause.' ” 
Harrisburg
, 227 Ill. App. 3d at 216, 591 N.E.2d at 90.  Thus, the court in 
Harrisburg
 explicitly approved exactly what the IELRB did in this case.

We reject the school board's invitation to read 
Harrisburg
 as limited to the court's power to remand.  We hold that the powers granted to the IELRB under section 15 of the Act include the authority to remand a labor dispute to an arbitrator who has legitimately found a violation of a party's rights under a collective bargaining agreement when the IELRB 
determines
 that the arbitrator has exceeded his authority by awarding a remedy for that violation that is inconsistent with section 10(b) of the Act (115 ILCS 5/10(b)(West 2000)).

We next address the school board's argument that this court lacks jurisdiction over this appeal
 because, as a result of the remand to the arbitrator, the I
ELRB's decision
 was not a final order
.  
Our power to review administrative decisions derives, not from the Illinois Constitution, but from the legislature. Ill. Const.1970, art. VI, §6.  See also 
ESG Watts, Inc. v. Pollution Control Board
, 191 Ill. 2d  26, 29, 727 N.E.2d 1022, 1024-25 (2000).  The appellate court “has only such power of direct review as the legislature may provide.” 
Central City Education Ass'n v. Illinois Educational Labor Relations Board
, 149 Ill. 2d  496, 526-27, 599 N.E.2d 892, 906 (1992), citing Ill. Const.1970, art. VI, §6.
  In the instant case, our power to review the IELRB's decision derives from section 16(a) of the Act, which provides as follows: 

“Judicial review.  (a) A charging party or any person aggrieved by a 
final order
 of the Board granting or denying in whole or in part the relief sought may apply for and obtain judicial review of an order of the Board entered under this Act in accordance with the provisions of the Administrative Review Law [
735 ILCS 5/3–101 
et seq.
 (West 2000)]
, as now or hereafter amended, except that such judicial review shall be taken directly to the Appellate Court of a judicial district in which the Board maintains an office.  Any direct appeal to the Appellate Court shall be filed within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision.” (Emphasis added.) 115 ILCS 5/16(a) (West 2000).  

Neither the Act nor the Administrative Review Law defines “final order.” Section 3–101 of the Administrative Review Law, however, which is the applicable provision, defines an administrative decision that is subject to review as “any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency.” 735 ILCS 5/3–101 (West 2000).

In the instant case, had the IELRB determined that the arbitrator's award reinstating Pittard
 was not binding and that the school board did not commit an unfair labor practice by not complying with the nonbinding award, 
but not remanded the matter to the arbitrator
, the decision would be a final order and this court would have jurisdiction to review that decision.  Clearly, such a de
cision would be reviewable because it would “affect[] the legal rights, duties or privileges of [a party] and * * * terminate[] the proceedings before the administrative agency.” 735 ILCS 5/3–101 (West 2000)
.  
The IELRB, however, recognizing that Pittard's grievance was valid,
(footnote: 2) 
also remanded the matter to the arbitrator.

The school board now cites several cases which it contends stand for the proposition that, because of this remand, the IELRB's decision was not final. See, 
e.g.
, 
Kvidera v. Board of Fire & Police Commissioners
, 168 Ill. App. 3d  380, 522 N.E.2d 757 (1988) (explaining that an order remanding a cause to agency to impose lesser sanction on employee than the one imposed was not final and appealable because it did not terminate the litigation between the parties on the merits). 
 But the present case is distinguishable from the cases cited by the school board for several reasons.  Most importantly, however, unlike the cases cited by the school board, the aggrieved party here may not necessarily be entitled to appeal once the outstanding matters are resolved.  That is so due to the statutory scheme involving grievances, unfair labor practices, and the review authority of the IELRB.  Under this scheme, if the school board complies with the alternative award fashioned by the arbitrator, there will then be no unfair labor practice as defined under section 14(a) of the Act, the Union will not be able to bring a charge before the IELRB, and the Union will 
never
 be able to obtain the judicial review
, as envisioned by the legislature under section 16(a) of the Act, of the IELRB's
 decision
 vacating the arbitrator's original award of reinstating Pittard to reserve status.
  In view of the school board's uncontested wrongdoing in violating its policy, such a result, while a convenient one for the school board, would result in manifest unjustness.

The school board also argues that the present appeal is an interlocutory appeal, which is not permitted under the Act.  This court has stated that the Act does not provide for interlocutory appeals. See, 
e.g.
, 
Niles Township High School District 219 Board of Education v. Niles Township Federation of Teachers, Local 1274
, 295 Ill. App. 3d  510, 512-13, 692 N.E.2d 700, 702 (1997).  The facts of this case are distinguishable from those in 
Niles Township
, where no order “ 'terminat[ing] the proceedings before the administrative agency' ” had been issued 
and
 charges for declaratory, monetary relief and other relief remained pending
 before the IELRB
.
 Niles Township
, 295 Ill. App. 3d at 512, 692 N.E.2d at 702, quoting 735 ILCS 5/3-101 (West 1996).  We disagree with the school board's characterization of the instant case as an interlocutory appeal.

We conclude that we have jurisdiction over this appeal and proceed to the merits.

ARBITRABILITY OF GRIEVANCE

I
n deciding the threshold issue of arbitrability
, the IELRB
 concluded that the grievance relating to the school board's failure to follow its reassignment policy
 
was 
substantively arbitrable under the language of 
Article 3
 of the collective bargaining agreement
 between the parties which prohibited the school board from committing “a deviation from, misinterpretation of, or misapplication of a practice or policy.”
  The Union maintains that the school board agreed to binding arbitration on the implementation of its reassignment policy, and thus it was appropriate for the arbitrator to award relief to Pittard for the school board's violation of its policy.  The school board argues that it made no such agreement, and further notes that any such agreement would have been illegal and unenforceable, pursuant to section 4.5 of the Act, which provides as follows:

“§4.5. Prohibited subjects of collective bargaining

(a) Notwithstanding the existence of any other provision in this Act or other law, collective bargaining between an educational employer whose territorial boundaries are coterminous with those of a city having a population in excess of 500,000 and an exclusive representative of its employees shall not include any of the following subjects:

* * * 

(3) Decisions to layoff or reduce in force employees (including but not limited to reserve teachers or teachers who are no longer on an administrative payroll) due to lack of work or funds, including but not limited to decline in student enrollment, change in subject requirements within the attendance center organization, closing of an attendance center, or contracts with third parties for the performance of services, and the impact of these decisions on individual employees or the bargaining unit.

(4) Decisions to determine class size, class staffing and assignment, class schedules, academic calendar, hours and places of instruction, or pupil assessment policies, and the impact of these decisions on individual employees or the bargaining unit.” 115 ILCS 5/4.5 (West 2000).

Thus, the school board asserts, Pittard was subject to a reduction-in-force decision which is a prohibited subject of bargaining.

An educational employer is not required to arbitrate a dispute that it did not contractually agree to arbitrate or that is not arbitrable under section 10(b) (115 ILCS 5/10(b) (West 2000))
 of the Act. 
Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board
, 165 Ill. 2d  80, 649 N.E.2d 369 (1995).  Section 10(b) provides in pertinent part:

“The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois.” 115 ILCS 5/10(b) (West 2000).

Accepting the school board's position, as so forcefully expressed during oral argument, that the legislature intended to give the school board unhindered authority to lay off reserve teachers,
 nothing in the language of section 4.5 prohibits an arbitrator from considering “
a complaint that there has been a deviation from, misinterpretation of, or misapplication of a practice or policy
” provided that the grievance does not challenge the school board's authority as embodied in section 4.5.  However, as noted below, the grievance did not challenge the authority of the school board to lay Pittard off.  Nor did the grievance challenge the authority of the school board to terminate Pittard 10 months after that removal if she was unable to secu
re a new permanent assignment.  Rather, the grievance challenges what the school board failed to do during the period after it removed Pittard from the Jefferson School and before she was terminated.  The subject matter of the grievance was the school board's obligation to provide certain assistance to Pittard during her search for a new permanent assignment.

Moreover,
 t
he IELRB additionally decided that neither section 4.5(a)(3) nor section 4.5
(4) of the Act was applicable.  On appeal, the school board now argues that the IELRB wrongly concluded that sections 4.5(a)(3) and 4.5(a)(4) of the Act did not prohibit the arbitrator from considering Pittard's grievance.

As to section 4.5(a)(3), the IELRB concluded as follows:

“Section 4.5(a)(3) did not 
prohibit the arbitrator from considering Pittard's grievance.  Because there were vacancies in Pittard's areas of certification at the time she was terminated, Pittard was not terminated due to a lack of work.  In addition, since the [school board] was advertising for and recruiting teachers at the same time as it was dismissing experienced teachers such as Pittard, Pittard clearly was not terminated due to a lack of funds.  Because Pittard was not dismissed due to a lack of work or funds, section 4.5(a)(3) is inapplicable.”

Now, on appeal, the school board argues that the IELRB's decision that section 4.5(a)(3) of the Act was inapplicable was clearly erroneous because the IELRB was “wrong on the facts” and “wrong on the law.”

As to the facts, the school board now argues, for the first time, that there were no vacancies that Pittard was qualified to fill at the time she was honorably terminated and that the IELRB's finding that there were vacancies in Pittard's areas of certification on August 27, 1999, is without any basis in the record and should be overturned.  As to the law, the school board asserts that the IELRB ignored the plain language of subsection (a)(3) when it found that Pittard was not laid off due to lack of work.

It is true that this court applies the clearly erroneous standard of review
 where the IELRB's findings present a mixed question of law and fact. 
Chicago Teachers Union, Local No. 1 v. Illinois Educational Labor Relations Board
, 334 Ill. App. 3d  936, 942, 778 N.E.2d 1232, 1237 
(2002), citing
 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d  380, 392, 763 N.E.2d 272, 280 (2001).  In 
AFM Messenger Service
, the Illinois Supreme Court explained:

“A mixed question of law and fact is one 'involv[ing] an examination of the legal effect 
of a given set of facts
.'  
City of Belvidere
, 181 Ill. 2d  at 205.  Stated another way, a mixed question is one '
in which the historical facts are admitted or established
, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or * * * whether the rule of law as applied to the 
established facts
 is or is not violated.'
  Pullman-Standard v. Swint
, 456 U.S. 273, 289 n. 19, 
72 L. Ed. 2d 66, 80 n. 19
, 102 S. Ct.  1781, 1790 n. 19, (1982);
 [citations].” (Emphasis added.) 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d  380, 391, 
763 N.E.2d 272, 279
(2001).

The school board's argument that the IELRB was “wrong on the facts” ignores that the underlying premise of the “clearly erroneous” test is that there exists, to some degree, a “given set of facts” that are established or undisputed.  The school board is now challenging the given set of facts considered by the IELRB.  In arguing that the IELRB was “wrong on the facts,” 
the school board asks this court to “reweigh” the underlying factual findings of this case.  When “examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of an administrative agency.” 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302
 (1998).

As the Union notes, however, the school board did not present its arguments regarding the applicability of section 4.5(a)(3) before the arbitrator, in its answer to the Union's complaint before the IELRB, or in its objections to the ALJ's recommended decision.  Generally, arguments not raised before an agency are waived for purposes of administrative review. 
Carpetland U.S.A., Inc. v. Illinois Department of Employment Security
,
 201 Ill. 2d  351, 396-97,
 776 N.E.2d 166, 192 (2002)
;
 Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278-79, 695 N.E.2d 481 (1998).  The Union further notes that the school board also failed to argue the factual predicate for its section 4.5(a)(3) argument, 
i.e.
, that on August 26, 1999,
 there were no vacancies that Pittard was “qualified to fill” and that her termination the following day
 was thus for “lack of work.”
  Had the school board argued this below, proof might have been offered to refute it.
  See 
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d at 278-79, 695 N.E.2d 481
 (explaining that such a practice serves the purpose of avoiding piecemeal litigation and, more importantly, allows the opposing party a full opportunity to present evidence to refute the argument).  Instead, the school board now asks us to decide that the IELRB's decision was clearly erroneous based upon arguments it never put forth during the administrative proceedings.  We conclude that the school board waived its argument that Pittard was not laid off due to “lack of work” or “lack of funds” as required in order for us to determine that section 4.5(a)(3) rendered the grievance inarbitrable or the award of reinstatement nonbinding.

Even if this court were to consider the school board's argument, on the record before us we would conclude that the IELRB's conclusion that section 4.5(a)(3) was inapplicable was not clearly erroneous.
  Recently, this court noted that, although the 
AFM
 Messenger Service
 court modeled the “clearly erroneous” test on the similar federal standard for reviewing purely factual findings, that federal standard is extremely deferential. 
Du Page County Board of Review v. Department of Revenue
,
 339 Ill. App. 3d  230,
 234, 790 N.E.2d 918, 922 (2003).
  Federal courts have described that standard in the following way: “ 'more than just maybe or probably wrong;  it must *** strike us as wrong with the force of a five-week old, unrefrigerated dead fish.' ”
 
Fisher v. Roe
, 263 F.3d 906, 912 (9th Cir. 2001), quoting 
Parts & Electric Motors, Inc. v. Sterling Electric, Inc.
, 866 F.2d 228, 233 (7th Cir. 1988); see also 
Du Page County Board of Review
, 339 Ill. App. 3d at
 234, 790 N.E.2d at 922.

The only evidence in the record bearing on section 4.5(a)(3) was introduced by the Union.  During the hearing before the arbitrator, the Union offered exhibits showing system-wide vacancies as of August 12, August 19, and August 26, 1999, around the time Pittard was terminated.  The record also contains testimony from a union official who testified, on behalf of Pittard, that social sciences was an area of critical need in the Chicago public schools, based upon a document she obtained from the Internet.
  This evidence before the IELRB was not challenged below by the school board.

After the school board,
 in its reply brief in this appeal,
 raised its section 4.5(a)(3) argument for the first time, the Union noticed that the record on appeal contained a defective copy of the August 26, 1999, list that was actually before the arbitrator.  The school board's counsel was apparently unaware of this factor because she took no part in the arbitration proceeding in this case.  Nonetheless, a review of the transcript of proceedings before the arbitrator clearly establishes that, 
during those proceedings
, when the Union's attorney recognized the list was missing a page, the attorney properly withdrew the exhibit and shortly thereafter, entered the correct copy into evidence.  We allowed a motion of the Union to supplement the record with the complete eight-page list of the Chicago Public Schools high schools vacancy list for August 26, 1999, from the Union's files.  As the Union correctly noted in its motion: “Had the Board ever made this argument below [- that at the time Pittard was terminated, there were no vacancies in the positions for which she was certified -], the Union would have sought leave to substitute the correct version of [the exhibit] for the defective one that now appears in the record.”  Interestingly, apparently questioning the truthfulness of the representations in the Union's motion and unconvinced by the transcript of proceedings before the arbitrator, the school board objected
: “The undersigned attorney has no way of determining whether the information which the Union is now seeking to place in the record on appeal was ever put in evidence before the arbitrator.  The attorney who handled this case before the arbitrator is no longer employed by the Board, and the undersigned took no part in the arbitration in this case.” Again, during oral argument,
 apparently unconcerned that we might construe an incomplete record, counsel for the school board seemingly chastised this court for allowing the Union to supplement the record since the information was not part of the original record.  The Union's motion to supplement the record was actually a motion to correct the record.  
It is clear that the exhibit that appears in the original record on appeal is the defective copy that is still missing a page - as counsel for the Union explained in the hearing before the arbitrator.  
In any event, we are not “left with the definite and firm conviction that a mistake has been committed” and conclude
 that the IELRB's decision that section 4.5(a)(3) was inapplicable because Pittard was not laid off due to lack of work or lack of funds, was not clearly erroneous.

The school board also contends that the grievance was inarbitrable pursuant to section 4.5(a)(4) of the Act because “[d]ecisions to determine class size, class staffing, and assignment” are prohibited subjects of collective bargaining. 115 ILCS 5/4.5(a)(4) (West 2000
). 
 This argument is meritless for the reasons stated in the IELRB decision.

The IELRB relied on the interpretation in
 Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board
, 315 Ill. App. 3d  522, 734 N.E.2d 69 (2000).  The court in that case analyzed section 4.5(a)(4) of the Act and explained that the word “class” modifies both “staffing” and “assignment.” 
 The court interpreted the phrase “class staffing and assignment” to mean how a class is staffed (
e.g.
, one teacher or two teachers working as a team), or to what class a particular teacher
 is assigned. 
Chicago School Reform Board of Trustees
, 315 Ill. App. 3d  at 530-31, 734 N.E.2d at 75-76; accord 
Chicago Teachers Union, Local No. 1 v. Illinois Educational Labor Relations Board
,
 334 Ill. App. 3d  936, 944, 778 N.E.2d 1232, 1239 (2002
);
 s
ee also 
Chicago Teachers Union, Local 1 v. Chicago School Reform Board of Trustees
, 338 Ill. App. 3d  90, 787 N.E.2d 224 (2003) (holding that the transfer of a teacher from a permanent position to a reassigned teachers pool is not a matter of "class staffing and assignment" as used in section 4.5(a)(4) of the Act).
  
The IELRB's decision here that the grievance was not barred by section 4.5(a)(4)
 of the Act was correct.

ARBITRATION AWARD

After determining that the grievance involving Pittard was substantively arbitrable, the IELRB noted that it had recognized additional reasons that an arbitration award may not be binding.  One of the grounds for determining that an arbitration award is not binding is where the award is in conflict with a statute as prohibited by section 10(b) of the Act, which, as noted above, 
prohibits the implementation of any provision in a collective bargaining agreement that is “in violation of, or inconsistent with, or in conflict with”
 any Illinois statute. 115 ILCS 5/10(b) (West 2002).  
As this court has explained: “An issue that cannot be the subject of a collective bargaining agreement also cannot be arbitrated.  Consequently, arbitration awards that conflict with the Act are not binding and not enforceable.” 
Chicago Teachers Union, Local No. 1 v. Illinois Educational Labor Relations Board
,
 
334 Ill. App. 3d  936
, 941, 778 N.E.2d 1232, 1236 (2002).  Thus, although
 the grievance was arbitrable, the IELRB also concluded 
that the arbitrator's award was impermissible under section 10(b) of the Act (115 ILCS 5/10(b)(West 2000)) because
 the provision in the arbitrator's award ordering Pittard reinstated was inconsistent with the school board's exclusive statutory authority to terminate teachers under section 34–8.1 of the School Code 
(105 ILCS 5/34–8.1) (West 2000)).
(footnote: 3)  In so doing, t
he IELRB relied primarily on 
Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board
, 309 Ill. App. 3d 88, 721 N.E.2d 676 (1999)(
Brown
)
.

Subsequent to the filing of this appeal, however, the Illinois Supreme Court in 
Land v. Board of Education of the City of Chicago
, 202 Ill. 2d  414, 421, 781 N.E.2d 249 (2002)
, rejected the 
Brown
 court's determination that the school board could not
 delegate its absolute or exclusive authority to make layoffs.  Instead, the 
Land
 court concluded that the school board was expressly authorized to delegate its authority to make layoffs to the general superintendent and the attorney, but not to principals.  The 
Land
 court, however, further stated as follows: “On the record before us, we need not determine whether the authority may be delegated to 
officers or administrators
 other than the general superintendent and attorney.” 
Land
, 202 Ill. 2d at 432, 781 N.E.2d at 260.
  The 
Land
 court did not directly address that portion of the 
Brown
 decision holding that the power could not be delegated to arbitrators.  The parties now present different interpretations of the effect of the 
Land 
decision on the absolute or exclusive authority of the school board and
 whether it may delegate its exclusive power to arbitration under a collective bargaining agreement.
  We agree with the Union that 
Brown
 does not survive 
Land
.

The 
Land
 court specifically found “section 34–8.1 to be silent on the question of the Board's ability to delegate layoff decisionmaking, other than with respect to principals.” 
Land
, 202 Ill. 2d at 430,
 781 N.E.2d at 259
.  We believe that no provision in the School Code renders the grievance inarbitrable or the award of reinstatement to the status of reserve (or reassigned) teacher nonbinding.  Thus the arbitrator's award, including his reinstatement of Pittard to reserve status, was binding.  As the ALJ determined, the school board committed an unfair labor practice in refusing to comply with this binding award.

During the pendency of this appeal, the General Assembly enacted Public Act 93–3, commonly known as the Chicago Education Reform Act of 2003 (the 2003 Reform Act)(Pub. Act 93-3, eff. April 16, 2003), which amended various sections of the School Code and the Act.  Among other things, the 2003 Reform Act amended two statutory provisions relevant to this appeal: Section 34–8.1 of the School Code, and Section 4.5 of the Act.
(footnote: 4)  The legislature amended the School Code as follows:

“§34-8.1  Principals. Principals shall be employed to supervise the operation of each attendance center.  Their powers and duties shall include but not be limited to the authority (i) to direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the attendance center in accordance with board rules and policies and (ii) to direct all other persons assigned to the attendance center pursuant to a contract with a third party to provide services to the school system.  The right to employ, discharge, and layoff shall be vested solely with the board, 
provided that decisions to discharge or suspend non-certified employees, including disciplinary layoffs, and the termination of certified employees from employment pursuant to a layoff or reassignment policy are subject to review under the grievance resolution procedure adopted pursuant to subsection (c) of Section 10 of the Illinois Educational Labor Relations Act.  The grievance resolution procedure adopted by the board shall provide for final and binding arbitration, and, notwithstanding any other provision of law to the contrary, the arbitrator's decision may include all make-whole relief, including without limitation reinstatement.
  The principal shall fill positions by appointment as provided in this Section and may make recommendations to the board regarding the employment, discharge, or layoff of any individual.”(Emphasis indicates additions.) Pub. Act 93-3, §34–8.1, eff. April 16, 2003.

Since we have already determined that the case relied upon by the IELRB, 
Chicago School Reform Board of Trustees
 
v. Illinois Educational Labor Relations Board
, 309 Ill. App. 3d 88, 721 N.E.2d 676 (1999)
 (
Brown
),
 
is no longer good law after
 
Land v. Board of Education of the City of Chicago
, 202 Ill. 2d  414, 421, 781 N.E.2d 249 (2002)
,
 we agree with the Union that the amendment clarified the law.
  Thus, the arbitrator had the power to hear the grievance and the arbitrator's award of reinstatement was binding.

CONCLUSION 

In accordance with the foregoing, we therefore conclude that: (1) the IELRB has the statutory authority to remand a matter to an arbitrator; (2) the IELRB decision here was a final order over which this court has jurisdiction; (3) the grievance here was arbitrable; (4) the arbitrator and the administrative law judge were correct in determining that Pittard could be reinstated; and (4) the IELRB 
conclusion
 
that the arbitrator's award was nonbinding
 was incorrect in view of the 
Land
 case, which our supreme court decided after the IELRB issued its decision.  Therefore, we reverse the decision of the IELRB and remand this matter for further proceedings in accordance with this order.  The IELRB is further directed to accept the recommended decision and order of the ALJ.

Reversed and remanded with directions.

O'MARA FROSSARD, P.J., and SMITH, J., concur.

FOOTNOTES
1:
Section 14(a) of the Act lists nine actions by educational employers which are defined as “unfair labor practices” and states in pertinent part as follows:

“Unfair labor practices.

(a) Educational employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act.

* * *

(8) Refusing to comply with the provisions of a binding arbitration award.” 115 ILCS 5/14 (West 2000).

2:
The standard used to determine whether arbitration awards are binding has been explained by the IELRB as follows: “In determining whether there is a binding arbitration award, we will consider such factors as whether the award was rendered in accordance with the applicable grievance procedure, whether the procedures were fair and impartial, whether the award conflicts with other statutes, whether the award is patently repugnant to the purposes and policies of the Act, and any other basic challenge to the legitimacy of the award. Otherwise, 
we shall not redetermine the merits or redetermine the issues presented to the arbitrator
.” (Emphasis added.) 
Chicago Board of Education
, 2 Pub. Employee Rep. (Ill.) par. 1089, No. 84–CA–0087–C at VII-256 (IELRB,  
June 24, 1986), 
rev'd in part on other grounds
, 
Board of Education v. Illinois Educational Labor Relations Board
, 170 Ill. App. 3d 490, 524 N.E.2d 711 (1988).

3:
This section of the School Code was recently amended and is an additional issue raised in this appeal.  At the time of Pittard's layoff, the statute provided as follows:

“34–8.1.  Principals.  Principals shall be employed to supervise the operation of each attendance center.  Their powers and duties shall include but not be limited to the authority (i) to direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the attendance center in accordance with board rules and policies and (ii) to direct all other persons assigned to the attendance center pursuant to a contract with a third party to provide services to the school system.  
The right to employ, discharge, and layoff shall be vested solely with the board
.  The principal shall fill positions by appointment as provided in this Section and may make recommendations to the board regarding the employment, discharge, or layoff of any individual.” (Emphasis added.) 105 ILCS 5/34–8.1 (2000).

4:
Neither the Union nor the school board has raised the amendment to section 4.5 of the Act as an issue in this appeal.